Ramsey *v.* Lewis.

[Monroe General Term, December 5, 1859. *T. R. Strong*, *Welles* and *Smith*, Justices.]

———•••———

## Ramsey *vs.* Lewis.

Where one of several sureties takes from his principal a chattel mortgage, to indemnify him for becoming such surety, and afterwards discharges the same without the consent of his co-sureties, he will, by that act, be prevented from calling upon his co-sureties for contribution.

All the sureties have an equitable interest in a security taken by one of their number, for his own indemnity; and to the extent that they are injured by the relinquishment of such security by him, the fact of such relinquishment is a defense to his claim against them for contribution.

APPEAL from a judgment entered upon the report of a referee. In November, 1852, Owen Edmonston was elected sheriff of the county of Ontario. In December of

that year, George Clute applied to Edmonston to be appointed a deputy, and gave his bond as such deputy, to Edmonston as such sheriff, with William Crawford, Henry Ramsey, (the appellant,) and Joseph S. Lewis, (the respondent,) as his sureties. The condition of this bond contained a clause in substance, that as often as required by Edmonston, he should account for and pay over to him all fees and perquisites of office, which he (Clute) might receive as such deputy sheriff, according to the rate agreed upon between them, to wit, one half thereof. In January, 1853, Edmonston entered upon his office as sheriff, and appointed Clute as a deputy, who accepted the appointment. The term of office of Edmonston as sheriff, and of Clute as his deputy, expired on the 1st of January, 1856. Prior to this time there had become due and payable from Clute as deputy, to Edmonston as sheriff, a sum of money for one half of certain fees collected. On the 19th of April, 1856, Ramsey took from Clute a chattel mortgage on a large quantity of personal property, which mortgage was duly filed in the proper town clerk's office, which recited, among other things, that whereas Ramsey had become surety for him as deputy sheriff upon his official bond, and was going to become surety upon bonds, he did therefore, for the purpose of securing Ramsey for the same, mortgage unto him the said personal property. And it was conditioned in the mortgage that Ramsey should not become liable on the official bond in any way, or be put to any expense, costs, charges or trouble, by reason of becoming surety for him, and if he did, he might sell the property and repay himself. On the 6th September, 1856, Edmonston and Clute accounted together, concerning the fees which were owing from Clute on the 1st day of January, 1856, as aforesaid, and liquidated the same at the sum of $231.66. On the 8th November, 1856, Edmonston commenced in this court an action on Clute's official bond, against Clute and his three sureties, to recover the sum of $231.66, at which the said fees were liquidated, and so prosecuted his

Ramsey *v.* Lewis.

suit that he obtained judgment against them, which was docketed on the 27th day of May, 1857, for $303.23, of which $71.57 was for the costs of the action. On the 4th day of May, 1857, Ramsey canceled and discharged the chattel mortgage dated 19th April, 1856, and took another mortgage on the same property, to himself, conditioned to secure certain debts and liabilities, in which he was interested, but of which his liability as such surety was not one. At the time said mortgage was canceled and discharged, it was a valid lien on the property thereby mortgaged, and an ample security for the payment of the debts therein mentioned, and also for the full payment of the said sum of $231.66, for which Clute and the plaintiff and defendant, and their co-surety, were liable to the sheriff on said official bond of Clute, and all interest which had accrued and costs which had been incurred thereon. Ramsey, on the 28th May, 1857, by virtue of the second mortgage, sold all the property upon which the two mortgages were a lien, and satisfied the debts and liabilities mentioned in that of the 4th May, 1857. On the 29th July, 1857, execution on the judgment recovered by Edmonston was levied and collected of the property of Ramsey, to the amount of $315.91, a portion of which was for sheriff's fees. To recover of Lewis one third of this amount, Ramsey brought this action. After the cause was at issue, it was referred to William E. Sill, Esq., as sole referee, and was tried before him. The referee found, as conclusions of law, that the defendant had an equitable interest in the mortgage so executed to the plaintiff by Clute, dated April 19, 1856; and had it not been canceled, would have had a right, upon a recovery against him by the plaintiff in this action, to be subrogated, to the extent of such recovery, to the right and portion of the plaintiff under the provisions of the mortgage in regard to said official bond. That in case of such subrogation, the rights of the defendant under the provisions of said mortgage of the 19th day of April, 1856, which were intended as a security against said official bond, would have been

Ramsey *v.* Lewis.

prior in equity, and as respects order of lien, to any claims of the plaintiff for becoming indorser or surety for Clute after the execution and delivery of said mortgage of the 19th of April, 1856. That the plaintiff having by his own act rendered such subrogation impracticable, and deprived the defendant of his equitable rights under said mortgage of the 19th of April, 1856, was not entitled to call upon him for contribution as co-surety. That the plaintiff, having canceled and discharged a valid and ample security held by him as his indemnity, from his principal, had no right afterwards to require his co-surety to share a common burden, of which the security so held by the plaintiff, had it not been discharged, would have relieved both the plaintiff and defendant. He therefore reported that the complaint in this action should be dismissed, with costs against the plaintiff; and from the judgment entered on the report, the plaintiff appealed.

*D. Herron,* for the appellant, insisted on the following, among other points: I. Where several sureties are bound for the same principal, and upon his default one of them is compelled to pay the money, or to perform any other obligation for which they all became bound, the surety who has paid the whole is entitled to receive contribution from all the others for what he has done in relieving them from a common burden; and this is the doctrine, both at law and in equity. (*See Story's Eq. Jur.* §§ 492 *to* 497.) The plaintiff, therefore, on proving the bond, the judgment and the payment of the whole amount of the execution, established a right to recover against the defendant the one third part of the amount thus paid.

II. On the issues set up as a defense in the answer, the defendant held the affirmative, and was bound to prove affirmatively all the facts alleged to support them.

III. The defendant, to maintain the fifth ground of defense to the first count, set up in his answer, was bound to

Ramsey *v.* Lewis.

show that the plaintiff received from a sale of property mortgaged by Clute to secure him on the bond, and from a sale by virtue of such mortgage, $500 or some other amount; and he was not at liberty, under this part of the answer, to prove or insist that the plaintiff might have received the same, but neglected or failed to do so, or that he improvidently or imprudently canceled a mortgage, by virtue of which he might have received such amount, but thereby put it out of his power to do so.

IV. It cannot be maintained that the plaintiff had not a right first to secure himself for having done an act which was *essential* to be performed, to render the instrument valid for any purpose. The mortgage of the 19th of April was taken entirely for the benefit of Ramsey. Lewis was not a party to, nor had he any thing to do with it. He had no right to control it in any way, nor had he any right to participate in its benefits, until Ramsey was first *fully* secured for his *individual* liability. It was not given to secure Lewis, nor any other person but Ramsey. Ramsey was entitled, *first*, to full indemnity, for becoming indorser and surety individually, before any other person had a right to share in it to any extent.

V. Ramsey had a right to *elect*, first, to apply the mortgage of the 19th April, to secure his individual indorsements and debts as surety for Clute, before he could be compelled to resort to it to indemnify the sureties on the bond; and Lewis was bound to prove that it was more than sufficient, to some extent, for the former purpose, before he could claim to be *subrogated* to any rights under it. This proof he wholly failed to produce.

VI. The referee erred in holding, as matter of law, that the defendant had an equitable interest in the mortgage of the 19th of April, and would have had a right, upon a recovery against him by the plaintiff in this action, to be subrogated, to the extent of such recovery, to the right and portion of the plaintiff in such mortgage, had it not been canceled. The

evidence shows other claims and demands against Clute, and against the mortgagor and the property thereby conveyed, to more than the value of the mortgaged property, in favor of Ramsey and Gasper, possessing a superior and prior equity for satisfaction to that of the demand in suit, to satisfy which such mortgage had been canceled and given up, and thereby become fully satisfied, discharged and at an end. Without satisfying such other claims and demands of Ramsey and Gasper, the defendant could *in no event* be entitled to an equitable interest in such mortgage, or to a cession of the plaintiff's rights therein.

VII. The referee also erred in holding, as matter of law, that in case of such subrogation, the defendant's rights under such mortgage to indemnity on the bond, would have been prior in equity, and as respects order of lien, to any claims of the plaintiff for becoming indorser or surety for Clute, after the execution and delivery of such mortgage, for reasons before stated. By so holding, the defendant's right by subrogation to be indemnified against liability on the bond, was made to displace, overthrow and take the position of a perfectly valid claim of the plaintiff, which legitimately arose from, and had its existence by virtue of such mortgage, in pursuance of which it was made.

VIII. It follows, as a necessary consequence, that the further holding of the referee, as matter of law, that the plaintiff had by his own act deprived the defendant of his equitable rights under such mortgage, by cancelling it, that such mortgage was a valid and *ample* security, on the bond, and would, but for such act, have relieved both the plaintiff and defendant from the demand in suit, is equally erroneous; and besides, the referee was not warranted in predicating his decision upon the cancelling and discharge of the mortgage, because no such defense was set up in the answer. Before the referee could consistently hold, as matter of law, that the mortgage of the 19th April was a valid and ample security to indemnify the plaintiff and defendant on the bond, he ought to have

found, as matter of fact, that it had priority over Gasper's mortgage and execution, which he has not done. On this point, his finding of facts, and also his conclusions of law, are entirely silent. The latter mortgage and execution are entirely thrown out of view, and the decision is based entirely upon the erroneously assumed equitable priority of the canceled mortgage, over Ramsey's subsequently accruing liability as indorser and surety for Clute.

IX. Conceding the principle of equity, contended for by the defendant, that sureties are entitled to the benefit of all securities which have been taken by any one of them, to indemnify himself against any liability, (*Story's Eq. Jur.* § 499,) there is no proof in this case that any such security existed when this action was commenced. There is no proof that any benefit was or could have been derived by the defendant from the canceled mortgage; nor is there proof that it was prior to Gasper's mortgage and execution. The presumption is that it was not, as Ramsey allowed it to be canceled to his own disadvantage, to give place to such mortgage and execution of Gasper. There is no proof that the canceled mortgage was available in the hands of the plaintiff, when his mortgage of the 28th of April was given, to secure any thing more than what he had then indorsed and become surety for Clute, in pursuance of the canceled mortgage. There is no proof that the plaintiff ever in any way derived any benefit from the canceled mortgage, by way of indemnity upon the bond.

X. The plaintiff entirely disproved the 5th ground of defense to the first count, by showing that he received nothing on the security taken for his indemnity on the bond. The defendant had no right *then* to urge a *new* defense, not set up in the answer, that the plaintiff had improperly canceled a mortgage, which, but for that, would have furnished him full indemnity for the demand in suit. This was a different defense entirely from that set up in the answer. The plaintiff was not notified by the pleadings to be prepared, and was not prepared for the trial of such an issue. Had that defense

been set up in the answer, the plaintiff would have been pre-pared to show, and would have shown affirmatively, and be-yond a doubt, other claims and demands upon the mortgaged property, belonging to the plaintiff and others, of superior equity, and having a better right to be satisfied out of such property than the demand in this action, and to an amount more than sufficient to consume the whole of such property.

XI. But conceding that the defendant had a right to fall back and insist upon the last mentioned defense, then he held the affirmative of that issue, and was bound to prove, affirma-tively, that Gasper's mortgage and execution was not entitled to priority over the canceled mortgage, and thus that the lat-ter was available, and an ample security against liability upon the bond.

XII. The defendant, in order to establish his defense to any extent, even if the answer was broad enough to admit the proof, was bound to show, affirmatively, the existence of an available security in the hands of the plaintiff, from which he either did or could have realized some part of the amount paid to satisfy the judgment, and that too without encroaching upon or sacrificing other valid claims against Clute, to an equal amount, embraced in the same security, and that the plaintiff wantonly, unnecessarily and fraudulently, and with the full knowledge that he was thereby sacrificing and destroying the defendant's rights, gave up and canceled such available security.

*Charles J. Folger*, for the respondent. I. Although this is an action at law, by one surety against a co-surety, to recover contribution, yet no consideration of the questions involved in the appeal can be fundamental, which is not based upon the fact, that the ground of the relief afforded to one surety against another does not stand upon any notion of mutual *contract*, express or implied, between the sureties, to indem-nify each other. The relief granted arises solely from princi-ples of equity, and is entirely independent of contract. (*Burge*

on *Suretiship*, 384. 1 *Story's Eq. Jur.* § 493, *and cases cited.* *Campbell* v. *Mesier,* 4 *John. Ch.* 338. *Derring* v. *Earl of Winchelsea,* 7 *Bos. & Pull.* 270 ; *S. C.,* 1 *Cox,* 318.) Indeed it was *originally doubted* whether the claim *could be* enforced *at law.* (1 *Story's Eq. Jur.* § 495. *Burge on Suretiship,* 384.) And now the giving of relief is put upon the ground of a *common interest* and a *common burden,* on which *equity alone* bases the liability to contribute. But even then *it is not an inflexible rule* that a co-surety must contribute. There may exist circumstances which, destroying the equities between the sureties, will relieve him from so doing. (1 *Story's Eq. Jur.* § 498.) The appellant cannot recover of the respondent, unless he shows *an existing* equity on his side. And it is not enough that an equity *once existed;* it *must still exist when suit is brought.* For if it shall appear in the case that he has disregarded the equitable rights of the respondent, and done any thing, or neglected any thing, so that they have been lost, *ipso facto,* he has destroyed his own equitable right to call on the respondent for contribution. Upon the basis of the maxim that he who seeks equity must do equity, he, who from his own deed, or his own neglect, cannot do the equity he might once have done, shall not have the equity he might once have had.

II. By way of the chattel mortgage Ramsey had from Clute an indemnity for becoming surety, which the other sureties of Clute did not possess. Ramsey did not, then, sustain an equal, " *a common burden,*" with the other sureties. In fact, having an indemnity fully equal to his liability, he bore no burden at all. Hence there existed, as between him and the other sureties, no equity, by reason of which he can call on them to contribute to the payment of the debt to Edmonston. The indemnity he had was ample to protect him against loss or damage by reason of being surety. Hence the reason of the rule, by which one surety is made to contribute to another, ceases to exist, in the case of Ramsey, and the rule must cease.

The ground work of his action is gone. He has no equity. (*Moore* v. *Moore*, 4 *Hawks' N. Car. Rep.* 358, 360, 1.)

III. A co-surety has the same defense against a co-surety which either would have had against the creditor of their common principal. (*Lowndes* v. *Pinckney*, 1 *Rich. Ch.* (*N. Car.*) *Rep.* 155, 179.) If a creditor, without the consent of the surety, relinquish a subsidiary security which he holds against the principal debtor or his estate, he discharges the liability of the surety *pro tanto*. (*Neimcewicz* v. *Gahn*, 3 *Paige*, 614, 649. *Baker* v. *Briggs*, 8 *Pick.* 122, 129.) A co-surety is entitled to any indemnity (or the avails of it) which the co-surety suing for contribution had from the principal debtor, or his estate. Or if the suing co-surety has released or discharged the indemnity, or has collected it and applied the avails to his own use, he cannot recover against his co-surety. (*Theobald on Pr. and Surety*, ch. 11, § 283. *Swain* v. *Wall*, 1 *Ch. Rep.* 149, 152. *Doolittle* v. *Dwight's Adm'rs*, 2 *Metc.* 561. *Morrison* v. *Pointz*, 4 *Dana's Ken. Rep.* 307, 310, 11. *Moore* v. *Moore*, 4 *Hawks*, 358. *Gregory* v. *Morrell*, 2 *Iredell's Eq. Rep.* (*N. Car.*) 233. *Agnew* v. *Bell*, 4 *Watts' Penn. Rep.* 31. *McMahon* v. *Fawcett*, 2 *Rand. Va. Rep.* 514. *Bacheldor* v. *Fiske*, ex'r, 17 *Mass. Rep.* 464, 470. *Elwood* v. *Deifendorf*, 5 *Barb.* 398, 405. *Smith* v. *Hicks*, 1 *Wend.* 202; *S. C.*, 5 *id.* 48. *Livingston's Ex'rs* v. *Van Rensselaer's Adm'rs*, 6 *Wend.* 63.) If, then, Ramsey has put it out of his power to place Lewis in as good a position as he had himself, he will be excluded from his demand. He thus releases his co-surety. (*Roberts* v. *Sayre*, 6 *Monroe's Ken. Rep.* 188. *Cockaigne* v. *Sumner*, 22 *Pick.* 117. 3 *Paige*, 614. 8 *Pick.* 122. *Hayes* v. *Ward*, 4 *John. Ch.* 123, 130. *Cheesebrough* v. *Millard*, 1 *id.* 409, 414. *Chester* v. *Bank of Kingston*, 2 *Smith*, 16 *N. Y. Rep.* 336.) And the same rule prevails at law in this respect as does in equity. (*King* v. *Baldwin*, 2 *John. Ch.* 554. *See also* 1 *Story's Eq. Jur.* §§ 501, 2; 8 *Pick.* 128; 7 *John. R.* 337; 5 *Wend.* 85, 89; 2 *Pick.* 223, 233.) Ramsey had valid and ample indemnity against any loss, by

reason of being surety for Clute. But this indemnity he saw fit to discharge and give up, or rather he saw fit to direct it to his own exclusive benefit, as security for other debts and liabilities of Clute to him. By giving up and discharging the first chattel mortgage, and taking to himself the property, by a sale under the latter mortgage, he put it out of his power to subrogate the respondent to his rights under the first, and also took from the principal debtor Clute, by so much, his ability to pay the debt to Edmonston, and thus relieve his sureties. Hence he cannot recover of the defendant any part of what he paid. (*See authorities cited above.*)

IV. Nor will it do to say, that the mortgage of the 19th April, 1856, (called the first mortgage,) which secured Ramsey against loss as surety on the bond, was also given for other matters, and that those matters exhausted the avails of it. It could only be held by Ramsey, so far as the rights of others were concerned, for the matters *specifically mentioned* in it. As far as the other matters specifically mentioned in it are concerned, they had, with one exception, all been paid; and the sale produced more than enough to pay this one (a note of $94.57) and the amount of the judgment in favor of Edmonston. And, indeed, the sale produced nearly enough to pay this judgment of Edmonston, all left unpaid of the mortgage of 19th April, 1856, all liens on the property prior to the mortgage of Ramsey of 28th April, 1856, and the whole of that mortgage. The avails of the mortgaged property should have been applied on the liability secured by it, to the official bond first, and to Ramsey's subsequent liabilities afterwards. This was due to Clute, as tending to release him from three sureties at once. (*Burge on Suretiship*, 131, 136, 137.) The rule of law as to the application of payments would compel Ramsey to apply the avails of the property to the satisfaction of the indebtedness, in the order in which it accrued—paying off the oldest first. And, as between Ramsey and his co-sureties, this doctrine has greater force; for he and they are dealing only with equities. And it was the highest equity,

that he should devote what he held for their common benefit, to their common relief. (*Burge on Suret.* 127, 8, 131. *Ferris* v. *Roberts*, 1 *Vernon*, 34. 1 *Sand. S. C. R.* 416, 452, 4.)

V. It does not matter that Ramsey did not know that a definite and fixed liability existed when he took the first mortgage of April 19th, 1856. It is enough that it did exist, and that he took a security, which operated the instant it was delivered, to protect against that liability. By thus taking it, he created for his co-sureties equitable rights, and imposed upon himself equitable obligations, which he was bound to maintain; and when he ceased to maintain them, indeed positively destroyed them, he threw away any right of contribution from his co-sureties.

VI. A *resumé* of the whole case is this: On the 1*st January*, 1856, the deputy sheriff, Clute, owed the sheriff, Edmonston, the debt for fees, on which he subsequently recovered judgment against the deputy and his sureties. Their liability had accrued or was fixed at that date. On the 19*th April*, 1856, Ramsey, one of the sureties, took from the deputy a valid and ample security against this liability. This security in his hands enured in equity to the benefit of all the sureties of the deputy. But this security Ramsey actually canceled and discharged for the purpose of securing debts due him solely. The property which formed this security he afterwards, by virtue of another lien upon it taken by him for his sole benefit, converted into money, and realized much more than enough to have fully satisfied the liability to the sheriff, and the other outstanding liability provided for by the security, which, for his own purposes, he discharged. And the question returns, shall he who has so disregarded and destroyed the equities of his co-sureties, enforce against one of them an action which has no basis but in an equity?

*By the Court*, T. R. STRONG, J. The defendant, as co-surety with the plaintiff in the bond to the sheriff, had an equitable interest in the chattel mortgage of the 19th of April, 1856, so

far as it was security to the plaintiff as such surety; and to the extent the defendant has been injured by the relinquishment by the plaintiff of that security without his assent—knowing as the plaintiff did at the time that the defendant was co-surety with him—aside from any question of pleading, it is a defense to the plaintiff's claim against him for contribution.

The equitable interest of the defendant in the mortgage, I think, only entitled him to have the proceeds of the mortgaged property, on a sale, applied ratably to all the debts and liabilities provided for, as well those to accrue as those then existing. The mortgage expressed that future liabilities were to be incurred by the plaintiff, and was in terms to be security for them; and no legal reason is perceived for a distinction between them and existing liabilities, as to the disposition of the avails of the property. (*Truscott* v. *King,* 2 *Selden,* 147.)

This view, as to the legal rule for the application of the proceeds of the property, will not affect the result of this case, as I am satisfied from the evidence that the property mortgaged was ample to pay all the debts and liabilities intended to be secured, including the future liabilities.

I think the answer sufficient to allow of the defense. The mortgage is set forth, and a claim to the benefit of it, in respect to the liability on the bond, asserted. Proof was given of the mortgage by the defendant, when the plaintiff showed he had canceled it. The defendant could not therefore have what he claimed, in terms, but he might have the same thing in substance, by this defense. No surprise can be pretended; there is no substantial difference between the relief sought and that obtained.

I think the judgment should be affirmed.

Judgment affirmed.

[MONROE GENERAL TERM, December 5, 1859. *T. R. Strong, Welles* and *Johnson,* Justices.]