DANIEL BRACKETT *v.* VOLNEY L. BARNEY and SARAH A. BARNEY.

A deed may be delivered to the grantee to await a complete execution or acknowledgment by another party, without authorizing the conclusive inference that such delivery gives effect to the instrument.

In June, 1854, the plaintiff loaned to B. $1000, as security for the repayment of which it was agreed that B. and his wife. should execute and deliver a bond and mortgage, and that B. should pay the plaintiff $10 in addition to the legal interest, for such loan, which was paid, and the bond and mortgage signed by B. and delivered to the plaintiff, with the agreement that the mortgage should thereafter be signed by his wife, who was then ill, and acknowledged by both. On the 27th of March, 1855, the parties met, before a justice, for the purpose of having the mortgage acknowledged, when B. and his wife refused to acknowledge the execution unless the plaintiff would repay the $10, paid as usurious interest. The plaintiff repaid the money, and the mortgagors then acknowledged the mortgage, and the same was delivered.

*Held,* that prior to the 27th of March, 1855, the bond and mortgage had never taken effect as delivered instruments, but were in the hands of the plaintiff, awaiting completion and acceptance. That before any effective delivery took place, the contract between the parties had been made legal by the repayment of the usurious premium; and that the bond and mortgage, when first delivered to take effect, were delivered in pursuance of a lawful contract, which they correctly represented; and that they were therefore vaild.

ACTION to foreclose a mortgage, bearing date June 22, 1854, executed by the defendants to the plaintiff to secure the payment of one thousand dollars, one half payable in three, and the other half in six years from the date of the mortgage, with annual interest; the mortgage having been given as collateral to the bond of Volney L. Barney, in the same terms with the mortgage, as to amount and time of payment.

The defense set up by the answer was, that the bond and mortgage were given to secure a usurious loan, the terms of which were stated.

The facts found by the referee before whom the cause was

tried were, in substance, as follows: that the bond and mort-
gage were executed by Volney L. Barney, on the day of their
date, as security for a loan of one thousand dollars, then
made by the plaintiff to Barney, and the money paid to the
latter; that it was at that time agreed, between the plaintiff
and Barney, that Sarah A. Barney, the wife of Volney L.,
should thereafter execute the mortgage, and, together with
her husband, acknowledge its execution; that it was also at
the same time agreed, as part of the contract for the loan,
that Barney, in addition to the payments for principal and
interest mentioned in the bond and mortgage, should pay to
the plaintiff the further sum of ten dollars, for the forbear-
ance and giving day of payment of the sum of one thousand
dollars, so loaned for the times and on the conditions in the
mortgage mentioned, and in pursuance of that agreement the
defendant Barney, afterwards and before the acknowledg-
ment of the execution of the mortgage, paid to the plaintiff
such ten dollars. That the bond and mortgage on the day
of their date were delivered to the plaintiff, and the mortgage
was soon afterwards signed by Mrs. Barney, but was not
acknowledged by her or her husband until March 27, 1855;
that the defendants then refused to acknowledge the execution
of the mortgage unless the plaintiff would repay the ten dol-
lars; and thereupon the plaintiff did repay the ten dollars,
and the said Volney L. Barney agreed to receive and did
receive the same in full satisfaction and discharge of any and
every claim or right, which he had or might have by reason
of the payment of the same by him to the plaintiff; with the
mutual agreement, understanding and intention, by and
between both of them, that the bond and mortgage should
be thereby discharged and purified from all claim, pretense
or taint of usury, and from any and all defenses by reason
thereof; and thereupon the defendants severally acknowl-
edged the execution of the mortgage, so that the same was
afterwards duly recorded. The referee also found that there
was due, on the bond and mortgage, one hundred and forty

dollars, for two years interest, which became due on the 22d of June, 1855, and on the 22d of June, 1856, and that all the principal remained unpaid, but not due at the date of the report; and that the mortgaged premises could not be sold in parcels, without material injury to the interest of the parties. Upon these facts, judgment was entered, directing a sale of the mortgaged premises, a foreclosure of the defendants' equity of redemption, and payment of the amount of the bond and mortgage, and costs, to the plaintiff, from the proceeds of the sale. That judgment was affirmed at the general term of the Supreme Court, and the defendants appealed to this court.

*George Sprague,* for the appellants.

I. If, by agreement, interest exceeding the legal rate be contracted for, although no more than lawful interest be reserved in the *written securities,* yet the contract is all void and the securities usurious; whether the usury is paid, or only promised (to be paid.) (*Merrills* v. *Law,* 9 Cowen, 65; 6 Wend. 268, *Same Case* in error, judgment reversed, but on different grounds—same doctrine maintained in *Macomber* v. *Dunham,* 8 id. 550; *Hammond* v. *Hopping,* 13 id. 505; Ord on Usury, 97; Comyn on Usury, 164.)

II. Such security can not be purged of the taint of usury by any other agreement, contrivance or device; but if destroyed or canceled and *new securities* be taken for the *original consideration* without the usury included, the new securities will be valid, and the *total annihilation* of the usurious securities is *absolutely necessary* for this purpose. (13 Wend. 505, above cited; *Miller* v. *Hull,* 4 Denio, 104; Ord on Usury, 105; Comyn on Usury, 183.)

III. The bond is the principal security. The mortgage is incident or collateral to the bond, and was given to secure the payment thereof. (*Jackson ex dem. Norton and Burt* v. *Willard,* 4 John. 41; *Jackson ex dem. Curtis* v. *Bronson,*

19 id. 325; *Wilson* v. *Troup*, 2 Cowen, 195; *Runyan* v. *Messereau*, 11 John. 534; Story's Eq. Juris. sec. 1015; 1 Hilliard on Mort. 163, 164, 166, 171, 193, 306, 327, 385; 2 Hilliard on Mort. 60, 64, 69.) The bond was perfected at the date thereof, and it never was canceled, or reformed so as to make it valid, as there were no subsequent transactions about it. The mortgage as delivered at its date was a security against Barney, his heirs, subsequent purchasers and incumbrancers with notice. (1 Hilliard on Mort. 494, 496, 497; *Tuthill* v. *Dubois*, 4 John. 216.) Neither the renewal of the old, nor substitution of a new security between the same parties can efface the usury, nor further security. (*Brinckerhoff* v. *Foote and Lathrop*, Hoff. Ch. 291; Clinton's Dig. 3375.) The renewal therefore of the mortgage, or an acknowledgment thereof by the parties, could not efface the usury in the bond which was the principal security. If the bond falls, the mortgage must also fall, as collateral securities, even if valid can not be enforced by the usurer against the borrower. (*Bell* v. *Lent*, 24 Wend. 230.) The extinguishment of the bond extinguishes the mortgage. (1 Hilliard on Mort. 306, 307 and notes, 327 and cases cited.)

*S. E. Church,* for the respondent.

I. The securities had not been perfected, and it was not too late to correct and purify the agreement upon which the security was to be delivered. There was no execution of the mortgage by Mrs. Barney so as to affect her interest, until she acknowledged it. (*Jackson and others* v. *Stevens,* 16 John. 110; *Jackson and others* v. *Cairns and others,* 20 id. 301; *Doe and others* v. *Howland,* 8 Cowen, 277.) Until such acknowledgment her right of dower could be affected. (1 R. S. 742, § 16.) As to Mr. Barney, it was not a security. There was no subscribing witness, it was not acknowledged, could not be proved, and could not therefore be recorded, and by the statute could not take effect as against a pur-

chaser or incumbrancer until acknowledged. (1 R. S. 738, § 137.) Mr. Barney could have defeated the mortgage as a security at any time, by conveying or incumbering the mortgaged premises. It was not a security so long as it remained in the power of the mortgagor to defeat it.

II. There was no delivery until execution — until the mortgage was fully executed. Possession by the grantee is not even prima facie evidence of delivery. (4 Pick. 520; 14 Peters, 327; 3 Metc. 109.) Until delivery, the contract was within the control of the parties, and could be reformed. (*Wright* v. *Wheeler*, 1 Camp. N. P. 165, note; *Barnes and others* v. *Headley and others*, 2 Taunt. 182; *Early* v. *Mahon*, 19 John. 147; *DeWolf* v. *Johnson*, 10 Wheat. 367; *Hammond* v. *Hopping*, 13 Wend. 505.) Having reformed the usurious agreement, and acknowledged and delivered the security upon the reformed agreement, it then took effect as a valid conveyance. (*Doe* v. *Howland*, 8 Cowen, 277; *Jackson* v. *Phillips*, 9 id. 94–113.)

SELDEN, J. The principle that when a written contract has been entered into, as security for money loaned at a usurious rate of interest, such written contract is not only void, but is incapable of being made valid by any new agreement between the parties, has long been recognized impliedly at least, and in the dicta of judges as one of the established rules of law applicable to usurious contracts. (Comyn on Usury, 183; Blydenburgh on Usury, 91; *Barnes* v. *Headley*, 1 Camp. 157, 165 note; *S. C.* 2 Taunt. 184; *Hammond* v. *Hopping*, 13 Wend. 505; *Miller* v. *Hull*, 4 Denio, 104.) The soundness of the rule when applied to some of the cases which may be included within its terms, in the sense in which those terms are ordinarily understood, may well be questioned. I do not find any decision applying that rule to facts similar to the present, and therefore think we are not embarrassed by precedents bearing upon the question. The proposition

that an illegal *contract* can never be made· legal by any new agreement of the parties, no one will dispute; but when the incurable vice is transferred from the contract to the writing which represents it, and·it is held that a writing, which at one time represents an illegal contract, can never, by a subsequent arrangement between the parties, be made to represent a legal one, I think the doctrine is extended beyond any ground of reason upon which it can rest.

Where, by the new contract, the usurious agreement is not only abandoned, but the actual facts of the transaction are so modified that the writing will truly represent a legal and not an illegal contract, no good reason is perceived why the parties may not properly agree to keep on foot the original writing as evidence of the new contract. The reason on which the contrary rule is supposed to rest is that the written contract, being tainted by the° vice of its original illegality, can never be made valid by any subsequent agreement. But the vice of usury affected the substance of the contract, as well as the written evidence of it, and made the one as illegal as the other; and yet it is abundantly settled that the parties, by a subsequent agreement, may exchange the usury, and render the original consideration valid and effectual to sustain a new promise for the repayment of the money loaned, with lawful interest. I am unable to discover the propriety of the rule which concedes to parties the right, by a new agreement, to remove the taint of usury from the consideration or substance of the contract, and denies the right to remove it from the written evidence of it, by such a change in the actual transaction as will make the writing represent a legal instead of an illegal contract. It may be said that the writing refers to the *original* contract, which was illegal, and not to the new contract, and this in one sense is true; but the same difficulty applies to the new contract in its substance, as that must be referred to its original illegal contract for its consideration, and if the vice which affected the consideration of the illegal contract is capable of being ex-

tinguished, why not the vice which affected the evidence of
that contract? It can not be denied, that in such a case,
if the written evidence of the original contract were destroyed
and a new instrument executed in its place, in the same
words, so that one should be a *fac simile* of the other, the
substituted instrument would be valid. Take the case now
before the court as an illustration of this position. If at the
time of the repayment of the ten dollars which constituted
the usury, the bond and mortgage now in suit had been can-
celed, and new ones executed bearing the same date and in
the same terms, the new instruments would have been valid,
because they would have truly represented a transaction
from which the legal taint of usury had been expunged by
the new contract; and yet the rule, which I am considering,
would deny to the parties the power to make a valid agree-
ment that the original bond and mortgage should stand as
the lawful evidence of that new contract. Such a distinc-
tion places form above substance; it gives to the written
evidence of a contract an importance which it denies to the
contract itself.

If A. makes a usurious contract with B., by which he
loans to him $400 for a year, and takes a note for $500, and
afterwards the parties agree to extinguish the usurious con-
tract, by increasing the loan to $500, and allowing the note
to stand as evidence of the new and lawful contract, I think
they may as well do so, as to cancel the old note and make
a new one in the same terms. The transaction is in sub-
stance a surrender of the note, and a redelivery of it upon
the new contract.

If parties make contracts in violation of law, they should
be subjected to all the penalties which the law prescribes for
such violation; but I am opposed to any rules of interpre-
tation or of evidence which will place unnecessary obstacles
in the way of parties who honestly seek to avoid such pen-
alties by undoing the wrong, and rendering their conduct
conformable to the law. I should therefore hold the bond

and mortgage valid, even if they had been at first absolutely delivered in pursuance of the usurious agreement.

The judgment in this case, however, may be sustained, whether it be possible to give validity, by a subsequent agreement, to a security once delivered in pursuance of a usurious contract, or not. The bond and mortgage in suit, prior to the abandonment of the usurious agreement, had not become valid and binding contracts. Laying the subject of usury aside, as not bearing upon the question of the delivery of the bond and mortgage, it is very certain that the plaintiff, on the refusal of the defendants to perfect the mortgage, according to the agreement, could have returned the bond and mortgage to the defendant Barney, and maintained an action immediately against him for the thousand dollars. (*Graves* v. *Dudley*, 20 N. Y. Rep. 79.) The delivery of the $1000 was not absolute, but conditional. It was not delivered as a loan for the three and six years, except upon the condition that the defendants should perfect the security according to the agreement. This condition, whether expressed or not, is necessarily implied from the transaction. It can not be presumed that the plaintiff intended to receive the bond and mortgage in their imperfect condition, as perfected securities, and thus bind himself to allow the loan to remain for six years without the security for which he had contracted; and although they were placed in his hands, I think they did not take effect as perfected and delivered obligations.

The delivery of a deed without acceptance is nugatory; (*Crosby* v. *Hillyer*, 24 Wend. 284,) and the mere taking of an instrument into his hands by the grantor and retaining it, of itself amounts to nothing, where the circumstances show that he did not receive or hold it as an effective conveyance. (*Jackson* v. *Richards*, 15 Wend. 617.) The question of delivery, involving acceptance, is always one of intention depending on the circumstances of the transaction. (*Bell* v. *Ingestree*, 12 Ad. & Ellis, N. S., 317; *Chouteau* v. *Suy-*

*dam*, 21 N. Y., 179.) In some cases the intention is clear, in others it is doubtful; but the intention always determines the character of the act. An intention to deliver on the one hand and to accept on the other, is necessary to give effect to the instrument. The delivery of a deed by the grantor to the grantee, to be held as an escrow, and to become effectual on the performance of some collateral act, is held to operate as an absolute delivery immediately. (*Worrall* v. *Munn*, 1 Seld. 229.) But this rule is applicable only where the deed is intended ultimately to take effect as a conveyance *from the force of such delivery*, without further act on the part of the grantor. But a deed may be delivered to the grantee to await his determination, whether he will accept it or not, (*Jackson* v. *Richards*, 15 Wend. 617;) or to be carried by the grantee and delivered to a third party, (*Gilbert* v. *N. Am. Fire Ins. Co.*, 23 Wend. 43,) or to be examined and returned if found defective, (*Graves* v. *Dudley*, 20 N. Y. 77,) and as in the present case, to await complete execution by other parties, (*Chouteau* v. *Suydam*, *supra*,) without the conclusive inference in any of the cases, that such delivery gives effect to the instruments. In every such case, when an absolute delivery was not intended, the grantee would be a mere trustee of the instrument for the grantor. If it be conceded, that in the present case, under its peculiar circumstances, the plaintiff on the refusal of the defendants to complete the execution of the mortgage, might have held the bond and mortgage as security, such as they would furnish in their unfinished state, for the return of the thousand dollars, this would be a right dependent upon his election, and until he made such election there would be no acceptance by him, which would bind him to allow the loan to remain for the time agreed upon; even if his election, after their default thus to hold them, would have that effect. Until such election should be made, which could not be made until after the other parties were in default, he would hold the instruments merely as their trustee. As no such election was ever made, if he had

any such right, he never held the instruments, prior to their full execution, otherwise than as the defendant's trustee. No distinction in this respect can be made between the bond and the mortgage. It is true that the bond was the principal obligation, and the mortgage collateral, and that the bond was complete in its form of execution, needing nothing in that respect to make its delivery complete. But in regard to delivery, the bond must stand on the same footing as the mortgage. Both were to be taken together as one instrument; the two, united, constituted the security which the plaintiff was to receive for his loan, and he was not bound to accept, and without direct evidence to that effect, should not be held to have accepted either, absolutely, until the execution of both was perfect.

The case of *Bronson* v. *Noyes*, (7 Wend. 188,) is in accordance with the principle which I have asserted. In that case Noyes, as under sheriff, arrested the plaintiff, D. C. Bronson, upon a *capias at respondendum*. Bronson applied to his brother, H. O. Bronson, to become bail on the arrest. He declined becoming bail, but told the sheriff he would see the plaintiff forthcoming in the morning. The sheriff said, "sign the bond, and he will get some other person to sign with you, or get other bail in the morning;" upon which the two Bronsons signed the bond, conditioned for the appearance of the plaintiff, (defendant in the capias,) on the return of the writ. The sheriff took the bond and the plaintiff was suffered to go at large. A few days afterwards the sheriff and H. O. Bronson called upon the plaintiff to have him procure new or additional bail, and failing in that effort, the sheriff committed him to jail; whereupon the action, for false imprisonment, was brought. On these facts it was held, that there had been no delivery of the bond, and that consequently the plaintiff could not recover. Nelson, J. delivering the opinion of the court said, "There must be a delivery as well as an acceptance to give validity to a deed. It is true, the bond was delivered to the defendant at the time of its execu-

tion, but for what purpose? If for the purposes expressed therein, then it would be valid; if as a mere deposit until additional security was obtained, clearly there was no delivery; and if an escape had taken place, the defendant could not have enforced its obligation for indemnity. The mere manual tradition of a deed by the grantor to the grantee, or obligee, and nothing else, would be *prima facia* evidence of a legal delivery, but not necessarily conclusive and inexplicable. The.party may explain and rebut the *prima facia* legal effect of the act. This is not impugning the doctrine applicable to an escrow; it is only allowing a party to contest the delivery."

The principle upon which that decision rests is clearly applicable to the present case, and I am of opinion, therefore, that the bond and mortgage, prior to the 27th of March, 1855, had never taken effect as delivered instruments, but were in the hands of the plaintiff, awaiting completion, and acceptance. That before any effective delivery took place, the contract between the parties had been made legal by the repayment of the usurious premium, and that the bond and mortgage when first delivered to take effect, were delivered in pursuance of a lawful contract, which they correctly represented, and that they were therefore valid.

The judgment of the Supreme Court should be affirmed.

All the Judges were in favor of affirmance upon the ground last stated by SELDEN, J. without passing upon the question first discussed.

Judgment affirmed.