# SUPREME COURT.

## SOLON WILDER, Supervisor of the Fourth Ward, agt. ORRIN O. BUTTERFIELD *et al.*

*Collector's bond for taxes — its execution — sufficiency — liability of sureties — lien of bond.*

A collector's bond, executed by him and approved by the supervisor of the town or ward, for the collection of taxes, is not void because the collector's name was not inserted in the indebtedness clause of the penal part of the bond. The collector signed the bond and delivered it, which was sufficient.

Nor is the bond void by reason of there being no seal to the collector's name. His adoption of the seal of one of the sureties, which he had a right to do, was sufficient.

Nor is the bond void for the reason that the condition of the bond does not state the amount of the taxes, — where it appeared that the blank was left unfilled, evidently by mistake, but the penal part of the bond was in double the amount of taxes named in the roll, and the bond, by its terms, was only to be void in case the collector "shall faithfully execute the duties of collector."

When the bond, in its terms, is a substantial compliance with the statute, and when filed with the approval of the supervisor indorsed thereon, it becomes a lien upon the property of the persons executing it. That is, the statute says: "Every such bond shall be a lien on all the real estate held jointly or severally by the collector or his sureties within the county at the time of filing thereof."

The collector's bond in this case was filed December 7, 1874. One of the sureties sought to be charged in this action on the bond, for the default of the collector in not paying over the taxes collected, executed a mortgage to his brother on the 30th of November, 1874, to secure the sum of $15,000. It was signed, sealed and acknowledged by the mortgagor and delivered to the mortgagee on that day, but, owing to the sickness of the mortgagor's wife, she did not then execute the mortgage, and the mortgagee laid aside the mortgage in his safe until the mortgagor's wife should be able to execute and acknowledge it, which she did on the 15th of January, 1875, and on that day the mortgagee had it recorded in the county clerk's office.

The question arose as to whether the mortgage which was delivered as a valid security to the mortgagee on the 30th November, 1874, or the collector's bond, filed on the 7th December, 1874, took priority as a lien? *Held*, that the mortgage took precedence as a prior equitable lien.

It must be regarded as settled by authority that an unregistered mortgage creates a prior lien to a judgment, and a collector's bond filed has no greater lien under the statute than a judgment.

It appeared from the evidence that there was advanced on the mortgage by the mortgagee to the mortgagor, prior to the 7th of December, 1874, the sum of $10,000. The other $5,000, rested in parol agreement, prior to January 15, 1875.'

It was *held*, that the equitable lien of the mortgage could only be upheld to the extent of the actual advances made ($10,000) by the mortgagee, prior to the filing of the collector's bond, and that the other $5,000 attached to the interest held by the mortgagor and surety at the time of the filing of the bond, and was subsequent to the plaintiff's lien.

It appeared that there were three sureties, with the collector, who signed his bond, to wit, P., A. and B., and that P. and A. were copartners doing a banking business under the firm name of P. & Co. That prior to the execution of the collector's bond, P. & Co. entered into an agreement with the collector that the latter should deposit the taxes collected by him, from time to time, with the firm of P. & Co., and for doing so they would allow him a certain sum as interest, and would become sureties, individually, upon his bond. This agreement was carried out, and after the collector had collected and deposited a large portion of the taxes as agreed, P. & Co. failed and became bankrupt, having converted to their own use and benefit the whole of the taxes thus deposited with them, and these funds were not traceable in the hands of the firm or in their assets, nor elsewhere.

*Held*, that P. and A. by entering into such an agreement with the collector, which was void as against public policy, thus aided him in committing a breach of trust, and in putting it out of his power to execute the duties of collector, as they severally had by their bond to the supervisor undertaken he should.

*Held*, also, that the appropriation of the taxes by P. and A. to their own use, under the circumstances, placed them personally in equity, in the position of principal debtors; therefore, the property subjected to the lien of the bond, belonging to the collector, to P. and A., or either of them, ought to be sold in enforcement and foreclosure of the liens caused by filing the bond, before any sale of the other obligor's real estate. If a deficiency should remain after such first sale, then the real estate of the other obligor should be sold.

*Jefferson Special Term, July* 1, 1875.

THE plaintiff is supervisor of the Fourth ward of the city of Watertown. In 1874 the defendant Butterfield was elected collector of taxes, and in the fall of that year was notified that the assessment roll and warrant for collection of the taxes of the ward were in the hands of Louis L. Phillips, as supervisor, who was then the supervisor of said ward; the defendant Butterfield took measures to obtain the necessary statutory bond, and to have the same approved by the supervisor, and to then obtain the roll and warrant. A bond was prepared and delivered to Phillips. It bears date December 1, 1874, being a printed blank, filled up and executed by G. F. Paddock, Morrel Andrews, S. Boon, and by O. D. Butterfield, and is in the penal sum of $40,500. The condition of the bond states as follows: "Whereas the said Orrin Butterfield, as collector of the Fourth ward, has this day received the assessment roll of said city for the purpose of collecting the taxes therein named, the total amount of which being ——— dollars ———: Now, therefore, if the said Orrin Butterfield shall faithfully *execute* the duties, as collector, then this obligation is to be void, otherwise of force." It was witnessed in these words: "Sealed and delivered in presence of L. H. Prentice." In the penal part of the bond are these words, to wit: "Sealed with our seals and dated the first day of December, 1874." Three seals appear attached to and impressed upon the bond opposite the four signatures. Indorsed upon the back of the bond are found these words, to wit: "Approved by Lewis F. Phillips, sup. Fourth ward," which were placed there by Phillips, as supervisor, when he received the bond and delivered the assessment roll and warrant. Below the indorsement are written, viz.: "*Filed Decr.* 7, 1874," in the handwriting of Geo. Cole, then the deputy of the clerk of Jefferson county. There are four wards in the city of Watertown, each of which has a supervisor. There is no other supervisor in said city, nor other officer known as a city supervisor. The persons who executed the bond knew these facts at the time of execution of the bond,

were residents of the city. The assessment roll and warrant were in usual and proper form. The collector collected the taxes in the usual manner, and daily, as he made collections, deposited the taxes with Paddock and Andrews, then doing business as bankers in said city under the firm name of G. F. Paddock & Co. That firm suspended in January, 1875, and their assets passed into the hands of Upham and others as assignees in bankruptcy. The taxes were due February, 1875, from collector to the county treasurer, were not paid, and proper demand was made, and proper affidavits made, and the treasurer duly issued his warrant; and there remained unpaid, by the collector at time of commencement of this action, the sum of $16,883.61, and interest from February 1, 1875, the deficiency for which the county treasurer issued his warrant.

A contest arises between the plaintiff and the defendant, supervisor of Third ward, as to which bond was filed first. Much evidence was given upon that question, though it is not very definite, the fact will be found that the Fourth ward bond was filed in the clerk's office in the early part of the seventh of December, and antecedent to the Third ward bond.

The bond for the town of Watertown was filed December 8, 1874. The defendant Oscar F. Paddock holds a mortgage of $15,000 recorded subsequent to the bond, and upon part of G. F. Paddock's real estate. A dispute arises, and there is a conflict in the evidence, as to whether the bonds are prior or subsequent to the lien of Oscar Paddock's mortgage. Emma A. Schley holds a mortgage of $15,000, executed by Geo. F. Paddock and wife, January 16, 1875, recorded January 18, 1875, upon a portion of Paddock's real estate, which mortgage is subsequent to the plaintiff's lien, and it is conceded that her mortgage is valid and unpaid.

*Levi H. Brown*, for plaintiff.

*D. O'Brien*, for defendant Holden.

*Lansing & Sherman*, for defendants Butterfield and Boon.

*Lansing, Rogers & Dorwin*, for Upham, Moffatt and Griffin.

*P. C. Williams*, for Richardson.

*Wm. Porter*, for George F. Paddock.

*F. W. Hubbard*, for Oscar Paddock.

*A. C. Brack*, for Emma A. Schley.

HARDIN, *J.*—It is provided by section 41 of the Revised Statutes (*vol.* 1, *page* 826, 5*th ed. R. S.*), that every person chosen collector shall execute, within eight days after he receives notice of the amount of taxes to be collected by him, to the supervisor of the town, and lodge with him, a bond with one or more sureties, to be approved of by such supervisor in double the amount of *such* taxes, conditioned for the faithful execution of his duties as such collector.

Section 42 provides that the supervisor shall file such bond with his approval indorsed thereon, in the office of the county clerk, who shall make an entry thereof in a book provided for that purpose, "in the same manner in which judgments are entered of record; and every such bond *shall be a lien* on all the real estate, held jointly or severally by the *collector* or *his sureties* within the county at *the time* of filing thereof; and shall continue to be such lien till its condition, together with all costs and charges that may accrue *by the prosecution* thereof, shall be fully satisfied."

The bond provided for by these sections is given to secure to the state and the public the taxes collected in pursuance of law for public purposes. Such bonds are given every year in every town and ward, and their general nature and effect must be quite familiar to citizens, and presumptively

well understood by the collector and his sureties, joining with him for the purpose of enabling him to receive the assessment roll and warrant, and to secure the interests of the public.

From the evidence it is apparent that each of the persons who signed the bond knew that Phillips was supervisor of the Fourth ward, and as such had possession of the roll and warrant, and that to enable the collector to get possession of them and proceed with the collection of the taxes, the bond in suit was required and given; that such bond must be approved by the supervisor of the Fourth ward. It is recited in the condition of the bond that Butterfield "as collector of the Fourth ward, has this day received the assessment roll of said city for the purpose of collecting the taxes therein named."

The assessment roll being referred to in the bond, it is proper to consider it in giving effect to the bond, and in giving construction of it and the acts of the several parties joining in its execution. By such reference it is obvious that the parties when they executed well understood that Phillips was supervisor of the Fourth ward, that Butterfield was collector of such ward, and that the assessment roll and taxes referred to, were those represented by the roll of the Fourth ward.

Having acted upon that assumption and having asked the supervisor, Phillips, to act upon it, they must now be held concluded. The bond, in the light of all the facts surrounding the acts of the parties to it, sufficiently refers to the duties to be faithfully performed and executed by Butterfield as collector of the Fourth ward. Those duties not having been executed which he and his sureties undertook he should execute, by paying over the taxes collected by him, the bond remains in force as to the collector and his sureties, notwithstanding some slight errors in description of the office of supervisor, and in the description of the assessment roll.

The three sureties only are named in the indebtedness

clause of the penal part of the bond, and the sureties therefore object to the validity of the bond. These objections must be overruled. Butterfield signed it and thereby, together with his act of delivery of it and asking the approval of it, bound himself to its provisions. It was not requisite that his name should appear in the formal part in order to render himself liable upon it (7 *Cowen*, 484; 16 *N. Y.*, 447, 451). The liability of his sureties was not increased or varied by his signing, and they are estopped from questioning its validity on account of his adding his signature to theirs.

Nor can the objection that he did not seal prevail in behalf of the parties. They say and he says, in the body of the bond, "sealed with our seals," and, subsequently, when it is witnessed, it is said, "sealed and delivered in presence of." These words quite clearly indicate that it was the intention of all the parties executing to sign and seal. They all did seal. The three seals were severally adopted. Butterfield adopted one of the seals as his. It was competent for him to do so. Having so adopted, he is now bound, and the objection must be overruled (*Wadsworth* agt. *Wendell*, 5 *Johns. Ch.*, 228; *Van Alstyn* agt. *Van Slyck*, 10 *Barb.*, 383). It was held in *Mackay* agt. *Bloodgood* (9 *Johns.*, 285), that a single private seal may be adopted, and bind several parties (*See, also,* 27 *N. Y.*, 564). The recitals furnish evidence that the parties have adopted the seals used, and they are severally estopped from controverting such adoption (*Atlantic Dock Co.* agt. *Leavitt*, 54 *N. Y.*, 35).

The condition does not state the amount of the taxes; there was, evidently by mistake, a blank left unfilled. But the penal part of the bond is double the taxes named in the roll. The obligation is to be void by its terms only in the event the collector "shall faithfully execute the duties of collector." It was his duty to pay over the taxes to the county treasurer; that he failed to do, and the bond therefore remained in force.

The objection predicated upon the omission to state in the

bond the precise sum of taxes must be overruled. Especially in a case where the taxes collected and the deficiency do not exceed one-half the penalty named in the bond is such a construction reasonable (*Supervisors of Schoharie* agt. *Pindar*, 3 *Lansing*, 8; *opinion of* MILLER, *J.*; 7 *Lansing*, 428; 28 *N. Y.*, 321; 26 *N. Y.*, 514; 3 *N. Y.*, 394; 1 *Denio*, 233; 1 *Cowen*, 670).

The bond, in its terms, was a substantial compliance with the statute, and when filed, with the approval of the supervisor indorsed thereon, it became a lien upon the property of the persons executing it.

Having reached the conclusion that the bond was duly executed by each of the persons whose names are signed to it, and that it is a valid bond in substantial compliance with the statute, its effect must be in accordance with the statute.

It must be held to be a proper instrument to create the lien named in the statute, from *the time* of filing the same. The lien attached in the early part of the day it was filed. As before stated, it was filed prior to the bond of the Third ward, and the lien caused by such filing was prior in point of *time*. The words "at the time of filing thereof," must be taken literally to express the date of the time. Then follow the words of the statute as to what property shall be subjected to the lien thus created. The result named in the statute must be the result declared by the court.

The statute says: "Every such bond shall be a lien *on all the* real estate held jointly or severally by the collector or his sureties, within the county at the time of filing thereof."

The judgment must follow the statute, and declare such lien was created by the filing at ten A. M. of December 7, 1874, and must also declare that such lien continues "and shall continue to be such lien till its condition, together with all costs and charges which may accrue by the prosecution thereof shall be fully satisfied." The statute clearly entitles the plaintiff to his costs, and the judgment will therefore so provide.

There must be a reference to ascertain specifically the real estate held jointly or severally by the collector or his sureties, within the county of Jefferson at the time of such filing as aforesaid.

A reference for such purpose may be had to George Gilbert, Esq., unless the parties can agree upon what real estate was so held the seventh of December by the collector and his sureties.

This action was properly brought by the successor of the supervisor to whom the bond was given, as was held in *Jasen* agt. *Ostrander* (1 *Cowen*, 670), and it was an action to which the collector would be liable, even after the supervisor had paid to the county treasurer, and he to the state (*id.*, 1 *Denio*, 237).

The defendant Oscar Paddock, on the 30th day of November, 1874, agreed with his brother, George F. Paddock, to advance $15,000, and take a mortgage upon the Paddock buildings, with a bond to accompany it, to secure the advance. The mortgage was prepared to be executed by George F., and Kate, his wife. If was signed and sealed and acknowledged by George F. on the thirtieth of November, and as the wife was sick it was not executed by her, but was taken by Oscar and put in his safe, with the understanding that Kate would be asked to sign when she recovered. It remained in this condition until the 15th of January, 1875, when Oscar sent a notary with it to the house of Kate, and she was asked to sign it, or acknowledge it, which she did, and the notary took her acknowledgment and returned it to Oscar, who placed it on record. It is now urged by several of the counsel for the sureties on the bond of the collector, that the mortgage was incomplete, that it created no lien upon the property covered by it, and that it could not operate until executed and delivered by Kate, and therefore that on the 7th of December, 1874, when the collector's bond was filed, that no lien had attached by reason of the mortgage. The filing of the collector's bond created a lien from the time

of filing, as before shown. It must be regarded as settled by authority, that an unregistered mortgage creates a prior lien to a judgment (1 *Edwards' Ch.*, 652; 4 *Johns.*, 216).

It is difficult to find in the statute any words giving any greater lien by reason of filing the collector's bond, than would be derived by a judgment creditor whose judgment was docketed.

The recording act provides that every conveyance not recorded shall be void as against any subsequent "*purchaser* in good faith and for a valuable consideration." The filing of the bond did not create the obligee a "purchaser in good faith and for a valuable consideration of the same real estate" covered by the mortgage (3 *R. S.*, 5*th ed.*, *sec.* 1, *p.* 45).

Nor does section 69 (*page* 59, 3 *Revised Statutes*, 5*th edition*), in its definition of the term "purchaser," bring the obligee within the terms of the first section of the recording act. The bond did not convey any estate or interest in the real estate for a "valuable consideration."

It must be determined, therefore, whether the mortgage was delivered by George F. to Oscar, so as to be good in the hands of Oscar as a valid security. If it was delivered to and accepted by Oscar, then it took effect November thirtieth and was antecedent to the filing of the bond of December 7, 1874.

It is quite clear that a delivery to Oscar was made by George F. with an agreement between them that thereafter the signature and acknowledgment of the wife should be obtained if possible, if she should recover and be willing to execute.

The mortgagor put the mortgage into the hands of the mortgagee, and gave him full possession of it. It is equally apparent that George F. did not reserve any right or power to recall the mortgage. He acknowledged its execution and placed it beyond his control, and it was so far completed as to enable the mortgagee to record it and to hold the estate of the mortgagor as a security.

Acceptance of delivery has been presumed in many cases from the beneficial character of the instrument to the grantee or mortgagee.

In this case the circumstances and facts disclosed by Oscar as a witness strengthen the presumption, and lead the mind to the conclusion that it was the intention of the parties to give and take a security, then good as to the interest of George in the premises.

The learned counsel for several of the defendants have cited numerous cases upon the subject of the necessity of a delivery and acceptance to support a deed or mortgage (*Fonda* agt. *Sage*, 46 *Barb.*, 123; *aff.*, 48 *N. Y.*, 175). The case most favorable to the position taken by them is *Brackett* agt. *Barney* (28 *N. Y.*, 340).

The reasoning of SELDEN, J., is strongly in favor of the position assumed by counsel for defendants here. But in that case the mortgagor had not acknowledged the instrument prior to the return of the usury. The mortgagee could not use his mortgage. He could not record it as neither the mortgagor nor his wife had acknowledged it prior to the time when, in March, 1855, the usury was returned, and the mortgage acknowledged by the husband and wife.

It is there stated that the question of delivery, involving acceptance, is always one of intention, depending on the circumstances of the transaction (*citing* 12 *Ad. & Ell.* [*N. S.*], 317; 21 *N. Y.*, 179). And it is further stated that a delivery to a party named as grantee or mortgagee is held to operate as an absolute delivery immediately, and not as an escrow. *First Selden*, 229, is to the same effect, and, also, *Arnold* agt. *Patrick* (6 *Paige*, 310).

The circumstances disclosed in this case support the delivery and acceptance much more fully than the facts pertaining to the mortgage under consideration in *Brackett* agt. *Barney* (*supra*), and cases there cited.

They favor the conclusion that it was the intention of the mortgagor and mortgagee to deliver it, so as to bind the

mortgagor, he having no power to recall it; and that they mutually agreed that if subsequently it was practicable, the signature of the wife should be obtained. She only had a dower interest, and if she did not survive her sickness, then known to both parties, her non-execution would be of no consequence.

The circumstances disclosed by the evidence indicate an intention on the part of the mortgagee to take and hold it as an effective security as against the interest of the mortgagor in the premises.

Therefore the delivery and acceptance must be held sufficient to sustain the mortgage (*Jackson* agt. *Richards*, 15 *Wend.*, 617; 24 *Wend.*, 284).

These circumstances may be shown by parol (*Christian* agt. *Suydam*, 21 *N. Y.*, 179).

The possession of the mortgage, under the circumstances disclosed by Oscar, was sufficient to give him an equitable lien upon the interest of George in the premises (*Jackson* agt. *McCrea*, 1 *Johnson's Cases*, 114).

This equitable lien, of course, can only be upheld to the extent of the actual advances made by Oscar prior to the filing of the collector's bond.

The evidence only justifies a finding that such advances were made prior to 7th of December, 1874, to the extent of $10,000. The other $5,000 rested on parol agreement, prior to 15th January 1875, and the filing of the bond attached to the interest in the real estate *held* by George F. at the time of filing of the bond (*Robinson* agt. *Williams*, 22 *N. Y.*, 381; 26 *N. Y.*, 381; 34 *Barb.*, 337; *Miller* agt. *Lockwood*, 32 *N. Y.*, 299; 7 *Cranch*, 34).

The lien of the mortgage, to the extent of $10,000 and interest, from 30th November, 1874, must be sustained as prior to the lien of the plaintiff, and the other $5,000, held to be subsequent to the plaintiff's lien.

The next question raised in this case relates to the order of sales to be made of the real estate of the obligors to enforce

the lien created by the statute. As before shown each obligor's real property is declared subject to the lien; the property held jointly, as well as in severalty, by the respective obligors.

The collector has no real property to which the lien attached, and he has no personal property. Each of the other obligors have real estate to which the lien attached at the time of filing the bond.

The conclusion has already been stated that the plaintiff is entitled to a judgment declaring the lien upon all the real estate in the county of Jefferson belonging to the obligors, or either of them; and all must be sold under such judgment, if needs be, to realize money to meet the deficiency.

But it is insisted, in behalf of the assignees of Paddock and Andrews, that the property owned by the bankrupts is only liable for their proportionate share of the deficiency, while, in behalf of Boon, it is insisted that his property should not be sold to satisfy the lien until the whole of the real estate in the county of Jefferson, belonging to Paddock and Andrews, or either of them, shall be sold. The evidence discloses that Paddock and Andrews were bankers carrying on jointly such business, and separate individual business; that they desired to obtain from the collector the taxes which he should collect, and were willing to pay interest thereon, and that to facilitate securing such taxes they were willing to sign his bond, and that they executed it with such intention with the knowledge of the other party; that the taxes were so deposited by the collector with the knowledge of each of the sureties; that Paddock and Andrews have never paid them over to the collector, or any other person; that they became bankrupt and their joint estate is not sufficient to pay their joint debts, and the separate estate of Paddock is not sufficient to pay his individual debts; that of Andrews is sufficient to pay his individual debts, but not sufficient to pay the firm debts.

The learned counsel for the assignees is correct in saying

that the collector had no right to make an agreement with Paddock & Co. to loan that firm the taxes, and that any agreement of that character was void as being against public policy (*Poultney* agt. *Randall*, 9 *Bos.*, 232; *Hill on Trustees*, 266).

They were trust funds which were in the hands of the collector, in virtue of his office, and he was guilty of a breach of public duty when he undertook to loan them and profit thereby. But Paddock and Andrews both knew the character of the moneys so deposited with them and converted them to their own use. They thus aided the collector in committing a breach of trust, and in putting it out of his power to "faithfully execute the duties of collector," as they severally had, by their bond to supervisor, undertaken he should. If the funds were traceable by the supervisor to any particular property he might pursue that property, impressed with such trust, and rescue it from the assets of the bankrupts, and the supposed equities of others, creditors of the firm or the individuals, that would be unavailing.

If the transaction be stated as a wrongful conversion of the funds by Paddock & Co. as it was by the firm, both members thereof would be liable to respond to the full amount quite as clearly as though an action of assumpsit were brought against them upon their contract of loan made with the collector.

They have had the taxes; they have appropriated them to their own use. Their estate, presumptively, has been enhanced by them. They personally are liable therefor. Their estate is chargeable therewith.

Their creditors have no equities which attach with any force to them; their creditors have no more right to the assets swollen by them, than they would have to specific property purchased with them, if such purchase were possible and the property known, so that a court of equity could seize upon it and ingraft the trust upon it.

No such property is found and the supervisor resorts to

the lien given by the statute and asks to enforce it. Then it is said that the real estate of Paddock and Andrews should only bear its aliquot share of the burden which rests upon all of the sureties. But P. and A. have had the benefits which precede the failure of the collector to faithfully execute the duties of his office.

They put it out of his power to comply with his bond, in which he is principal debtor upon the face of it (*Meigs* agt. *Shattuck*, 1 *Denio*, 233).

But it has been held that in equity parol evidence may be given to show the real relation which parties to an instrument sustain to each other (14 *Vesey*, 161 ; *Barry* agt. *Ransom*, 2 *Kern.*, 462).

By the terms of the bond the collector and each of his sureties are severally debtors to the supervisor.

The collector is principal debtor so long as the face of his bond is alone considered; so far as its declarations and recitals are concerned, he is the party primarily liable. And each of his trustees, upon the mere fact of failure to pay over, is alike liable. If one should pay he would be entitled to call upon the other for contribution.

But where all the facts and circumstances attending the execution of the bond, the collection of the taxes and the deposit thereof with P. & Co., the absence of any receipt of them by the other surety, disclosed by the evidence are considered and weighed, other results follow (*Story Eq.*, *sec.* 498).

The payment of the sum called for by the bond to the plaintiff by P. & Co. or P. and A., or either of them, would not entitle them or either of them, to call upon the principal debtor, the collector, as he appears by the face of the bond, to indemnify and pay them or either of them. Nor would P. & Co. or P. and A., or either of them by force of such payment and the bond, be entitled to call upon the other surety for contribution (*Story Eq.*, *sec.* 498, *p.* 571).

Contribution does not arise so much from an actual con-

tract as from natural justice, and it is only enforced in furtherance or in obedience to the demand of justice (4 *Johns. Ch.*, 334; 2 *Kern.*, 462).

The fact that the taxes were received by P. & Co. from the collector, would, under all the circumstances, be to him a sufficient answer to their action.

He could very properly reply that payment by them to the plaintiff was only in settlement of their liability to him and in pursuance of his undertaking and in fulfillment of their duty, and in accord with exact justice.

So, too, if they should seek contribution from the other surety, his reply would be the same in effect, *mutatis mutandis*. The same result would follow if the specific taxes had been kept intact by P. & Co., and they had, instead of returning them to the collector, handed them to the supervisor. Surely they would not thus have gained a cause of action for contribution against their co-surety. But, as before shown, they have converted the specific taxes tortiously, and thus become primarily liable to pay; thus, they have given force to the indemnity lien created by their bond and the statute upon their real estate. Their appropriation of the taxes to their own use, under the circumstances, places them, primarily, in equity, in the position of principal debtors. That conversion to their use of the taxes is the primary cause of the default, which renders the lien created by the bond, under the statute, effectual in the hands of the supervisor, to be enforced to remove the omission to faithfully discharge the duties assumed by all the obligors in the bond.

Cases are reported where courts at law, as well as in equity, have controlled their processes for the collection of debts and the enforcement of liens, so as to require the creditors to first exhaust their remedy against the person or property primarily liable for the debt held by the creditor, before resorting to the surety or property secondarily liable in equity (*Bk. of Auburn* agt. *Throop*, 18 *John.*, 504; 18 *Barb.*, 561).

This result has frequently been attained through the prin-

ciple of subrogation (*Johnson* agt. *Zink*, 51 *N. Y.*, 333; 29 *Barbour*, 524).

So where a surety, by paying the debt, will lose the benefit of a security held by a creditor, he may come into a court of equity and require the creditor to enforce payment of the principal debtor holding such lien (17 *John.*, 384; 4 *John. Chy.*, 123; *Wright* agt. *Austin*, 56 *Barb.*, 17).

The assignees of P. & Co. stand in no better position than the bankrupts held. They take, not as *bona fide* purchasers, but subject to all liens and equities existing against the bankrupts' estate (28 *Barb.*, 333; 32 *id.*, 322; 15 *N. Y.*, 195; 17 *id.*, 580).

These views lead to the conclusion that P. and Andrews created a lien severally upon their real estate with the intention and for the purpose of obtaining the taxes; that they obtained the taxes and appropriated them to their own use prior to their failure, thus causing the very default which renders the whole obligors liable to have the lien, created by filing their bond, enforced.

That they gave the bond for the purpose of rendering it available in the event they should fail to provide a return of the taxes to the public; that the other surety stood, in equity, rather as their surety, or surety of a surety, than as a co-surety. Therefore, the property subjected to the lien belonging to the collector, to Paddock and Andrews, or either of them, ought to be sold in enforcement and foreclosure of the liens caused by filing the bond, before any sale of the other obligor's real estate. If a deficiency shall remain after such first sales, then the real estate of the other obligor should be sold.

Directions accordingly will be given to the officer making sales. The property covered by Mrs. Schley's mortgage should be the last sold, belonging to her mortgagor. Some question was suggested upon the argument as to who should sell the property after the coming in of the report of the referee named to report titles and descriptions of real estate.

As the public are interested in the proceeds of the sales to

be made, and the sheriff is the officer who has given security, it is believed advisable that he be, as he will be, appointed to foreclose the lien arising by reason of the filing the bond as aforesaid.

1. The questions relating to the form and directions for judgment for deficiency, after sales, are reserved until the report of sales shall come in, showing the amount thereof.

2. The plaintiff is allowed costs of this action.

3. All questions as to costs of any or all of the defendants, out of the fund arising on sales or otherwise, or against each other personally, are likewise reserved until the coming in of the sheriff's report of *sales.*

The plaintiff's attorney may serve a copy of this opinion and proposed findings of fact and law, and if they are not agreed to they may be settled before me upon three days' notice.