**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1607-23

GEORGE T. DAGGETT,

      Plaintiff-Appellant,

v.

MICHAEL SYDOR,

      Defendant-Respondent.

_____

> Argued September 25, 2024 – Decided October 8, 2024
>
> Before Judges Mayer and Puglisi.
>
> On appeal from the Superior Court of New Jersey, Chancery Division, Sussex County, Docket No. DC-001112-23.
>
> Gary A. Kraemer argued the cause for appellant.
>
> Respondent has not filed a brief.

PER CURIAM

Plaintiff George T. Daggett appeals from a November 17, 2023 order entering judgment in favor of defendant Michael Sydor, and dismissing his

complaint with prejudice after a one-day bench trial. In addition, plaintiff appeals from a January 5, 2024 order denying his motion for reconsideration. We affirm both orders on appeal.

We recite the facts from the November 13, 2023 bench trial.[1] At trial, plaintiff testified on his own behalf. Plaintiff also proffered testimony from John Mathews, who prepared a repair estimate in support of plaintiff's claimed damages. Also introduced as evidence at trial were two videos taken from a Nest security camera located on defendant's property,[2] and three still photographs depicting red or orange paint on plaintiff's car. Defendant testified on his own behalf.

Plaintiff resides on Fox Hollow Road in Sparta, New Jersey. Defendant resides on the same road. Prior to filing this case, the two neighbors were involved in litigation to resolve plaintiff's use of a gravel right of way (ROW) on defendant's property (ROW action).[3] After a two-day bench trial in the ROW action, a judge granted plaintiff the right to use an eight and three-quarter foot

---

[1] Plaintiff retained trial counsel. Defendant proceeded pro se at trial.

[2] As part of the record on appeal, we reviewed the video footage from defendant's Nest camera.

[3] Daggett v. Sydor, No. C-36-20 (Ch. Div. Mar. 21, 2023).

A-1607-23

ROW easement, traversing a portion of defendant's property. This appeal involves plaintiff's attempt to use the ROW easement on April 22, 2023.

On that date, plaintiff drove his blue 2019 Lincoln Continental up an access road in the direction of the ROW easement. At the same time, defendant stood outside his barn, at the edge of the access road near the ROW easement, painting traffic barriers. Defendant held a small paint roller in one hand and a container of red paint in the other.

Plaintiff noticed defendant and stopped his car on the access road. Plaintiff then drove past defendant toward the ROW easement. When plaintiff reached the easement area, defendant's traffic barriers inhibited plaintiff's ability to turn onto the ROW easement.

Unable to turn onto the ROW easement, plaintiff reversed his car back down the access road while defendant continued painting the traffic barriers. Defendant's back faced the access road when plaintiff drove his car in reverse and away from the ROW easement. After reaching the end of the access road, plaintiff made a K-turn and drove toward a main road.

The following morning, plaintiff noticed splotches of red or orange paint on the passenger side rear tire, rear hubcap, and rear quarter panel of his car. According to plaintiff, the paint on his car matched the paint defendant used on

3

the traffic barriers. Approximately two days after the incident, plaintiff asked his daughter to photograph the paint splatters on his car.

About one week later, plaintiff took his car to Denville Bear & Body Service to obtain a repair estimate for the paint damage to his car. The manager, John Mathews, inspected plaintiff's car and estimated the repair would cost $1,833.95.

About two weeks after the incident, plaintiff filed a pro se complaint against defendant. According to his complaint, as he drove toward the ROW easement, plaintiff claimed defendant "purposely, intentionally, and maliciously threw . . . red paint onto [his] motor vehicle to mar the finish." Plaintiff further asserted "[d]efendant vindictively and maliciously damaged [p]laintiff's property while [plaintiff] was lawfully attempting to use the easement crossing the [d]efendant's property as had . . . been confirmed by a [j]udgment of the Superior Court" in Daggett v. Sydor, No. C-36-20 (Ch. Div. Mar. 21, 2023). Plaintiff also claimed defendant was negligent because he failed to stop painting as plaintiff drove past. Defendant filed an answer denying plaintiff's allegations. Plaintiff then retained counsel, who filed an appearance.

At trial, defendant proffered two videos, subsequently admitted into evidence, from a Nest security camera at his house. The video footage showed

4

defendant painting the traffic barriers and the access road on which plaintiff's car drove past defendant.

Mathews testified the three photographs marked as exhibits at trial depicted the condition of plaintiff's car as of April 28, 2023. After he inspected the vehicle, Mathews testified he prepared the written estimate of the cost to repair plaintiff's car.

Plaintiff then testified. According to plaintiff, he attempted to access the ROW easement but stopped his car after noticing defendant painting. Plaintiff explained he did so because he "just wanted to be seen, because there had been so many problems." The video footage does not indicate plaintiff made any effort to speak to defendant when he stopped his car. The first video clip shows plaintiff continuing to drive toward the ROW easement.

Plaintiff expressed his belief that there was missing video footage between the time he stopped his car as depicted in the first video clip and when he reversed his car as seen in the second video clip. Plaintiff explained the "pause" or "blip" between the video clips supported his missing video footage argument. According to plaintiff, the missing footage occurred just as the rear passenger side of his car reversed past defendant.

A-1607-23

Defendant testified next. He told the judge he was painting traffic barriers near the ROW easement to "limit intrusions onto the apron of [his] barn." In addition, defendant explained how his motion-activated security camera operated:

> While they're always waiting to be triggered, they don't necessarily run continuously or save the information continuously. So, if there's not active movement, if there's not a loud sound, they don't actually record anything. They're kind of waiting for something of interest to happen. It's rather unpredictable how often they actually will capture bits of information.

Defendant also told the judge he did not willfully cause paint to splatter onto plaintiff's car. Defendant explained "quite by chance, I think a drip . . . occurred. I can't deny that."

The judge intervened during plaintiff's counsel's cross-examination of defendant and asked questions about the video clips marked as evidence. He asked defendant to replay the videos and proceeded to query defendant regarding the gap between the two clips. Defendant responded that limitations in the Nest camera system caused the gap in videos. According to defendant, "After it records a segment, it basically has a refractory period. It pauses before it starts going again." The judge then allowed plaintiff's counsel to continue cross-examining defendant.

6

On cross-examination, plaintiff's counsel remarked the video clips failed to show paint splatters on defendant's driveway. Defendant replied "Oh, no, there absolutely is. And on my shoes, and on my apron, and on my pants." When asked on cross-examination if plaintiff assumed the risk by driving past defendant as he was painting, defendant agreed. Defendant testified "[Plaintiff] entered an active painting project on a windy day. I mean, yeah, bad luck."

During closing arguments, defendant urged the judge to find plaintiff responsible for "any damages real or imagined" because:

> [P]laintiff deliberately and willfully placed his vehicle in the vicinity of an active painting project with the intent of causing an accident of some nature that could result in a legal action as part of plaintiff's ongoing three-year harassment of the defendant.

In his closing argument, plaintiff's counsel argued defendant was liable to plaintiff under a theory of negligence. If not an intentional tort, counsel asserted "at minimum, it was an accidental act." Counsel argued the purported missing video from defendant's Nest camera was suspicious because the glitch in the footage would show "definitively whether [defendant] flicked his paint roller in a split second that [plaintiff]'s car . . . drove by." In the absence of the "missing" video footage, plaintiff argued:

> [B]oth [video clips] support our contention that this was a deliberate, purposeful act. But, at minimum, it was

7

an accidental act, negligent – what does an accident mean? It means in most cases that someone was negligent.

The judge reserved decision at the conclusion of the testimony. Four days later, the judge issued a November 17, 2023 order entering judgment for defendant and dismissing plaintiff's complaint with prejudice.

The judge found plaintiff's "belief" there was missing video footage, "[w]ithout more," was insufficient to prove "[d]efendant intentionally tampered with and left out incriminating footage." Additionally, the judge found defendant's explanation for the "gap[]" in the video footage credible.

Further, the judge concluded "the absence of video footage coupled with [p]laintiff's [trial] testimony" was insufficient "to prove that [d]efendant acted deliberately." The judge accepted defendant's testimony that any paint on plaintiff's car was "the result of an accident." Based on the absence of any credible evidence or competent testimony proffered by plaintiff, the judge found plaintiff "failed to meet his burden to prove that [d]efendant deliberately caused the paint to make contact with [p]laintiff's car."

In dismissing plaintiff's negligence claim, the judge stated "[t]he mere showing of an accident causing the injuries alone is not sufficient to authorize an inference of negligence." Moreover, to sustain a negligence claim, the judge

explained plaintiff bore the burden of proving the necessary elements of negligence, particularly that defendant owed a duty to plaintiff. Because plaintiff failed to prove defendant owed a duty to plaintiff, the judge found plaintiff's negligence claim failed. The judge, relying on well-settled case law, reiterated the "mere showing of an accident is not enough to prove negligence."

Plaintiff filed a motion for reconsideration or, in the alternative, a new trial. The judge denied the motion.

On appeal, plaintiff argues the judge's decision entering judgment for defendant was against the weight of the evidence. In addition, he asserts the judge failed to properly apply the elements of his negligence claim to the facts presented. We disagree.

We set forth the applicable standards of review for the issues raised on appeal. When the issues on appeal present mixed questions of law and fact, we defer to the supported factual findings of the trial court, but review de novo the trial court's application of law to the factual findings. State v. Pierre, 223 N.J. 560, 577 (2015). Further, we review a "trial court's determinations, premised on the testimony of witnesses and written evidence at a bench trial, in accordance with a deferential standard." Nelson v. Elizabeth Bd. of Educ., 466 N.J. Super. 325, 336 (App. Div. 2021) (quoting D'Agostino v. Maldonado, 216

N.J. 168, 182 (2013)). We do so "because an appellate court's review of a cold record is no substitute for the trial court's opportunity to hear and see the witnesses who testified on the stand." Balducci v. Cige, 240 N.J. 574, 595 (2020). We also defer to a trial court's fact findings based on video or documentary evidence. State v. McNeil-Thomas, 238 N.J. 256, 271 (2019).

"Factual findings premised upon evidence admitted in a bench trial 'are binding on appeal when supported by adequate, substantial, credible evidence.'" Potomac Ins. Co. of Ill. ex rel. OneBeacon Ins. Co. v. Pa. Mfrs.' Ass'n Ins. Co., 215 N.J. 409, 421(2013) (quoting Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). We will "not disturb the factual findings and legal conclusions of the trial judge" unless "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Griepenburg v. Townpship of Ocean, 220 N.J. 239, 254 (2015) (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)).

However, the "trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Rowe v. Bell & Gossett Co., 239 N.J. 531, 552 (2019) (quoting

Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995)).

We reject plaintiff's argument that the judge erred in dismissing his claim alleging defendant purposely caused paint to splatter onto his car. Plaintiff argues the judge failed to give due weight to the missing video footage and the shape and configuration of the paint splatters on his car.

The judge issued a written statement explaining his reasons for dismissing plaintiff's intentional tort claim. Specifically, the judge cited the complete absence of competent evidence to support the claim. In addition, the judge questioned defendant regarding the "missing" video footage and found defendant's testimony credible. Further, the judge considered the three photographs in evidence and reviewed the video footage at least twice. While plaintiff disagrees with the judge's assessment of the evidence, we are satisfied the judge properly considered the evidence and, significantly, noted the absence of credible or competent facts proffered by plaintiff to support his intentional tort claim.

We also reject plaintiff's argument that the judge erred in dismissing his negligence claim. The judge dismissed the claim after concluding defendant owed no duty of care to plaintiff.

11

Plaintiff failed to cite any competent evidence to support his contention that defendant was negligent. Rather, plaintiff suggested, without basis in law, negligence should be inferred under these circumstances. As the judge aptly explained, "[p]laintiff is incorrectly conflating accidental actions with negligence."

To prevail on a negligence claim, a plaintiff must establish four elements: "(1) a duty of care, (2) a breach of that duty, (3) actual and proximate causation, and (4) damages." E.S. ex rel. G.S. v. Brunswick Inv. Ltd. P'ship, 469 N.J. Super. 279, 298 (App. Div. 2021) (quoting Est. of Campagna v. Pleasant Point Props., LLC, 464 N.J. 153, 171 (App. Div. 2020)). A plaintiff must "establish the existence of negligence 'by some competent proof . . . ' because '[n]egligence is a fact which must be shown and which will not be presumed.'" Franco v. Fairleigh Dickinson Univ., 467 N.J. Super. 8, 25 (App. Div. 2021) (first quoting Townsend v. Pierre, 221 N.J. 36, 51 (2015), and then quoting Long v. Landy, 35 N.J. 44, 54 (1961)).

To succeed on a negligence claim, "plaintiff must show that a defendant owed the injured party a duty of care." Pfenninger v. Hunterdon Cent., 167 N.J. 230, 240 (2001) (citation omitted). "[T]he question whether there is a 'duty' merely begs the more fundamental question whether the plaintiff's interests are

12

entitled to legal protection against the defendant's conduct." J.S. v. R.T.H., 155 N.J. 330, 338 (1998) (quoting Weinberg v. Dinger, 106 N.J. 469, 481 (1987)).

Trial courts must consider multiple factors in assessing the existence of a duty, including "fairness and public policy; foreseeability; the relationship between the parties; the nature of the conduct at issue; 'and the ability to alter behavior to avoid injury to another.'" G.A.-H. v. R.G.G., 238 N.J. 401, 414 (2019) (quoting Robinson v. Vivirito, 217 N.J. 199, 208 (2014)). "Foreseeability is a critical but not dispositive factor in the analysis of whether a duty of care to avoid harm to a third party is recognized." Robinson, 217 N.J. at 208 (citing Carvalho v. Toll Bros. & Devs., 143 N.J. 565, 573 (1996)).

Plaintiff argues "[t]he evidence in this case clearly established that the [defendant] owed a duty of care to the [plaintiff] to stop rolling paint for the brief second or two that it took for the car to pass by in the ROW."[4] However, plaintiff failed to cite the foregoing well-settled New Jersey case law for determining the existence of a duty of care. Contrary to plaintiff's contention, foreseeability of the risk of harm alone is not dispositive in a duty analysis.

---

[4] Plaintiff relies solely on Palsgraf v. Long Island R.R. Co., 28 N.Y. 339, 344 (1928), in arguing "[t]he risk reasonably to be perceived defines the duty to be obeyed."

A-1607-23

Robinson, 217 N.J. at 208. The additional factors to be considered by a trial court in determining the existence of a duty of care include an evaluation of the fairness of imposing a duty and "a weighing of the relationship of the parties, the nature of the risk, and the public interest in the proposed solution." Badalamenti v. Simpkiss, 422 N.J. Super. 86, 93 (App. Div. 2011) (quoting Kelly v. Gwinnell, 96 N.J. 538, 544 (1984)).

Rather than address the other duty factors applicable under New Jersey law, plaintiff's argument rests solely on the foreseeability that paint may splatter. However, we considered the other duty factors and agree with the motion judge that defendant owed no duty to plaintiff under these facts.

Here, there is no relationship between plaintiff and defendant to fairly impose a duty of care as exists in relationships involving students and teachers, spouses, landlords and tenants, or practitioners and patients. See Jerkins v. Anderson, 191 N.J. 285, 296 (2007) (students and teachers); J.S., 155 N.J. at 351 (spouses); Anderson v. Sammy Redd & Assocs., 278 N.J. Super. 50, 54 (App. Div. 1994) (landlords); Coleman v. Martinez, 247 N.J. 319, 355 (2021) (practitioners).

In this case, the parties were simply neighbors. Neither had control over the other. No power imbalance existed between the parties. Further, the nature

14

of the risk was minor here. Additionally, the parties shared the ability to avoid injury. Under these circumstances, the factors did not weigh in favor of imposing a duty of care on defendant. Thus, the judge correctly dismissed plaintiff's negligence claim.

We next address plaintiff's argument the judge erred in denying his motion for reconsideration. We review a trial judge's decision on a motion for reconsideration under Rule 4:49-2 for an abuse of discretion. Branch v. Cream-O-Land Dairy, 244 N.J. 567, 582 (2021) (citation omitted). "An abuse of discretion 'arises when a decision is made without a rational explanation, inexplicably departed from established policies, or rested on an impermissible basis.'" Kornbleuth v. Westover, 241 N.J. 289, 302 (2020) (quoting Pitney Bowes Bank, Inc. v. ABC Caging Fulfillment, 440 N.J. Super. 378, 382 (App. Div. 2015)).

Reconsideration is generally limited to instances where: "1) the [c]ourt has expressed its decision based upon a palpably incorrect or irrational basis, or 2) it is obvious that the [c]ourt either did not consider, or failed to appreciate the significance of probative, competent evidence." Id. at 301 (quoting Guido v. Duane Morris LLP, 202 N.J. 79, 87-88 (2010)). "Reconsideration cannot be used to expand the record and reargue a motion. Reconsideration is only to point

15

out 'the matters or controlling decisions which counsel believes the court has overlooked or as to which it has erred.'" Capital Fin. Co. of Del. Valley, Inc. v. Asterbadi, 398 N.J. Super. 299, 310 (App. Div. 2008) (quoting R. 4:49-2).

Plaintiff failed to satisfy the requirements for reconsideration. To prevail on a motion for reconsideration, a moving party must show the original decision was based on plainly incorrect reasoning, the judge failed to consider evidence, or there is new evidence not previously available. See Cummings v. Bahr, 295 N.J. Super. 374, 384-85 (App. Div. 1996).

Having reviewed the record, the judge did not abuse his discretion in in denying reconsideration. While plaintiff may disagree with the judge's decision, his dissatisfaction is not a proper basis for reconsideration. Palombi v. Palombi, 414 N.J. Super. 274, 288 (App. Div. 2010).

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1607-23