ALBANY,
Dec. 1830.

Livingston
v.
V. Rensselaer.

LIVINGSTON'S EXECUTORS, *appellants*, and VAN RENSSELAER'S ADMINISTRATORS, *respondents*.

Where one of two co-sureties pays the debt of their principal and obtains an assignment of a mortgage from the creditor pledged to him by the principal debtor, and forecloses the same and becomes himself the purchaser of the mortgaged premises, he holds the same as an absolute, and not as a trust estate in which his co-surety has an interest. The utmost that the co-surety can claim is, when the mortgaged premises are sold for a nominal sum, that their fair cash value at the day of sale shall be credited on the original debt. *So held* in a case where the surety who obtained the assignment of the mortgage had previously proposed to his co-surety to pay the original debt and take an assignment for his own benefit, or that each should pay the one half of the debt, take an assignment jointly, sell the mortgaged premises and divide the proceeds, and such offers had been rejected.

*It seems*, that had the sale been for a substantial though an inadequate sum, instead of a merely nominal one, the co-surety who refused to join in paying the original debt would have been concluded from instituting an inquiry into the actual value of the lands at the day of sale, especially if he had had *actual* instead of *constructive* notice of the sale.

A commission of *five per cent.* to the surety who sold the premises and the expense of foreclosure were held proper items to be deducted from the value of the mortgaged premises.

A decree will not be set aside because an interested witness was examined before the master on reference, if his competency was not objected to before the master, and his testimony manifestly had no influence upon the report of the master.

A decree directing *contribution* by one surety to the representatives of another, is within the scope and equity of a bill filed by *administrators*, alleging payment of a debt by their intestate *as surety for the defendant* and a third person, although by the answer and proofs it appears that the intestate and the defendant were co-*sureties* for such third person, the bill praying a *discovery* as well as *relief*.

APPEAL from chancery. The bill in this case was filed by the administrators of *Henry I. Van Rensselaer*, deceased, in January, 1816, against John Livingston, who died during the pendency of the suit, which was revived against his executors. The complainants charged that their intestate, on the 2d August, 1798, became bound in a bond with William Y. Burroughs and John Livingston, as *surety for them* to Brockholst Livingston, for the sum of $4350, with the interest thereof; that their intestate was called on for payment

by the obligee, and that he paid the amount of the bond; and that a bond and mortgage executed by one Kellogg had been assigned by the two obligors, Burroughs and Livingston, to the obligee as collateral security, which the bill alleged was in the possession of the defendant Livingston, who had been called on to pay the bond to Brockholst Livingston, or to account for and pay over to the intestate the proceeds of the bond and mortgage executed by Kellogg, which he had refused to do. The bill concluded by praying for a full answer, account, discovery and relief. The defendant Livingston, in his *answer*, admitted that he executed the bond to Brockholst Livingston, but denied that it was given for a debt owing by him and Burroughs *jointly*, or by him *individually*, and averred on the contrary that the bond was executed by him as *surety for Burroughs and Henry I. Van Rensselaer*, and that although Henry I. Van Rensselaer executed the bond as surety for Burroughs, it was well understood that as between the defendant and Burroughs and Henry I. Van Rensselaer, the latter were to be considered as the *principal debtors*, and the defendant as their surety ; that when the bond was produced to him it was already executed by Burroughs and Van Rensselaer, and had been attempted to be put off in that condition, but the obligee refusing to receive it without his signature, he reluctantly put his hand and seal to it. He denied that he, together with Burroughs, assigned to Brockholst Livingston the bond and mortgage of Kellogg, and that the same were or ever had been in his possession ; and averred, on the contrary, that the same were assigned by Brockholst Livingston to Henry I. Van Rensselaer, who foreclosed the mortgage, and sold the mortgaged premises without the knowledge, privity or consent of the defendant ; and that the mortgaged premises were of much greater value than the amount of the bond executed to Brockholst Livingston. He admitted that the intestate, previous to his death, called on him for payment of one half of the bond executed to Brockholst Livingston, and that he refused to pay. To the answer there was a replication, and proofs were taken.

ALBANY,
Dec. 1830.

Livingston
v.
V. Rensselaer.

Burroughs was the son-in-law of Henry I. Van Rensselaer, and the latter and the defendant Livingston became the sureties of Burroughs in the bond to Brockholst Livingston ; at the same time Burroughs assigned to Brockholst Livingston, as *collateral security,* a bond and mortgage executed by one Martin Kellogg, for the sum of $4539,37, by which mortgage were conveyed several lots of land in the county of Ontario. Henry I. Van Rensselaer was sued on the bond to Brockholst Livingston, and a judgment obtained against him. In the fall of 1802, Henry I. Van Rensselaer proposed to the defendant John Livingston, either that he should take an assignment of Kellogg's bond and mortgage to himself for his sole benefit and pay the debt due to Brockholst Livingston, or that each should pay the one half of the debt, take an assignment jointly, and have the mortgaged premises sold and divide the proceeds ; both of which propositions were ·rejected by the defendant, he observing that Burroughs was the son-in-law of Van Rensselaer, and that although he believed that the mortgaged premises were worth more than the amount due on the bond to Brockholst Livingston, yet, .as he had no money to spare, he was determined not to pay any portion of it. In December, 1802, an arrangement was entered into between Henry I. Van Rensselaer and *Jacob Rutsen Van Rensselaer,* whereby the latter, for a certain .consideration,· agreed to indemnify Henry I. Van Rensselaer, against the payment of the debt to Brockholst Livingston, upon receiving an assignment of the bond given to Brockholst Livingston, of the judgment against Henry I. Van Rensselaer and of the bond and mortgage executed by Kellogg, agreeing to look for his satisfaction to the proceeds of the mortgaged premises, and after deducting such proceeds from the amount of the debt of Brockholst Livingston, to collect the *half* of the difference, whatever it might be, from the defendant John Livingston. In pursuance of this arrangement, *Jacob Rutsen Van Rensselaer* paid the principal and interest of the bond to Brockholst Livingston, amounting to $6125,25 ; but B. Livingston *refusing to assign* to him the bond and mortgage of Kellogg, the ar-

rangement between *Jacob* R. V. R. and *Henry* I. V. R. fell through, and the latter, in 1806, paid to the former all the monies advanced by him to Brockholst Livingston. At some period between 1803 and 1809, Brockholst Livingston did assign the bond and mortgage of Kellogg to *Jacob Rutsen Van Rensselaer*, who received the same as the *agent* of *Henry I. Van Rensselaer*, by whose instructions the mortgage was *foreclosed by advertisement*, and the mortgaged premises were sold on the 15th July, 1809, and struck off to an agent of Jacob R. Van Rensselaer for a *nominal sum ;* and the title by conveyance and re-conveyance was vested in Jacob R. Van Rensselaer, who gave Henry I. Van Rensselaer a farm in the county of Columbia worth $4000, in exchange for the premises purchased at the mortgage sale. In September, 1810, Jacob R. Van Rensselaer conveyed the mortgaged premises to Jeremiah Van Rensselaer, with warranty, who sold several of the lots, and who valued the premises sold at the mortgage sale as worth, in 1814, the sum of $5319. This valuation was put upon the lands in consequence of an interrogatory on the part of the complainants confining the valuation to the year 1814.

The cause was heard on the pleadings and proofs before Chancellor *Sanford*, who, on the 21st December, 1825, made an order of reference to a master to ascertain and report the sum with which Henry I. Van Rensselaer ought to be charged, by reason of the bond and mortgage of Kellogg, that is to say, what sum of money or other property was received by him or his agents on account of the same, and the amount or value of such property ; and also what sum might have been received from the bond and mortgage with due diligence and without wilful default ; and that the master state such account or accounts as he should think proper to shew the true sum with which the said Henry ought to be charged by reason of the bond and mortgage. And he further directed, that if the sum with which Van Rensselaer was chargeable by reason of the bond and mortgage should be less than the sum paid by him to Brockholst Livingston, then that the master should state an account in which, after deducting from the sum paid to Brockholst Livingston the

sum with which Van Rensselaer was chargeable as afore-
said, one half of the balance should be charged against
Van Rensselaer, and the other half against Livingston, the
defendant in this cause. The reference was had, and the
master reported that the money paid by Van Rensselaer
to Brockholst Livingston, with the interest thereof, amount-
ed to $3027,75, on the 15th July, 1809, the day of the
sale of the mortgaged premises by virtue of Kellogg's mort-
gage ; that the mortgaged premises on that day were worth
$3898,84, with which sum he charged Van Rensselaer,
deducting thereout *five per cent.*, amounting to $194,94,
for the expense and trouble of converting the land into
money, and $50 for the expense of foreclosing the mort-
gage, leaving $3653,90, to be charged to Van Rensselaer ;
which, deducted from the amount paid Brockholst Liv-
ingston, with the interest thereof as aforesaid, left the sum of
$4373,85, the one half of which he charged to Van Rensse-
laer and the other half to Livingston ; and that the interest of
such moiety up to the date of his report, viz. 15th August,
1826, made the whole sum to be paid by Livingston $4802,12.
The master further reported, that on the hearing before him,
a certified copy of the deposition of *Jacob Rutsen Van Rens-
selaer*, who was examined as a witness on the part of the
complainants, before an examiner in August, 1817, was pro-
duced in evidence ; and also, that the said Jacob R. V. R. was
examined by him, the master, and that he testified that his
deposition was *in all respects true and correct*, except that
in his deposition he had stated that the mortgaged premises
were the only consideration of the conveyance of the farm
by him to Henry I. Van Rensselaer, valued at $4000 ; where-
as the fact was, that in addition to the mortgaged premises,
he had received of the said Henry property to the amount
of $2200 ; and he further reported, that the said Jacob tes-
tified, that since the taking of his deposition before the ex-
aminer, to wit, in the year 1822, he had become interested
in the event of the suit, so far, that he was to receive all that
should be recovered over and above a certain amount, which
was about $2000.

The defendants excepted to the report, *first*, because the
master in stating the account had charged Van Rensselaer

with the value of the mortgaged premises on the 15th July, 1809, whereas he ought to have charged him with the value in 1814, the period specified by the complainants in the interrogatories exhibited by them ; the effect being to charge the defendants with five years interest more than should be charged, and depriving them of the enhanced value of the land between 1809 and 1814 ; *second,* that the master should have charged the complainants with all monies received by Jacob R. Van Rensselaer or Jeremiah Van Rensselaer as the proceeds of the mortgaged premises, the defendants insisting that Henry I. Van Rensselaer, on the purchase under the foreclosure of the mortgage of Kellogg, took a trust, and not an absolute estate in the premises ; *third,* that the master erred in taking the testimony of Jacob R. Van Rensselaer, he being interested in the event of the cause ; and *fourth,* that the master erred in allowing a commission of five per cent. and the expense of the foreclosure to the complainants' intestate.   In April, 1828, the cause was heard on the exceptions before Chancellor Jones, who overruled the same, confirmed the report, and decreed that the sum charged to the defendant be paid within ninety days, together with the costs of the suit, or that execution issue.   The defendants appealed.

*D. B. Ogden,* for appellants.   The decree is not conformable to the bill.   By the bill, a case is presented of the payment of a debt by a surety for his principal ; by the decree, contribution is ordered by a surety to his co-surety.   The relief granted was not asked for.   Allowing that under the bill filed a decree for contribution might be made against a co-surety, and that Van Rensselaer was the surety of Burroughs, the defendant Livingston was not his *co-surety ;* he was the surety of both Burroughs and Van Rensselaer ; it is so expressly charged in the answer, and not contradicted by the proof.   Livingston did not execute the bond until after Burroughs and Van Rensselaer had executed it, nor until after it had been attempted to be put off without his signature.   Under such circumstances he was not liable to contribute.   14 *Vesey,* 159.   If Van Rensselaer and Livingston

be considered as co-sureties, the former having received an assignment of Kellogg's mortgage, held it as well for the benefit of his co-surety as for himself. He had no right to foreclose it without the assent of his co-surety, and having used it as his own, he discharged his co-surety from his liability to contribute to the payment of the original debt. If he had the right to foreclose the mortgage of Kellogg, the only effect of such foreclosure was to bar the equity of redemption of the mortgagor; it could not affect the rights of Livingston. Van Rensselaer, by becoming the purchaser under his own foreclosure, held the mortgaged premises in trust for himself and his co-trustee, and is bound to account for their value, not at the time of the sale, but at any subsequent time. The complainants themselves supposed they ought to account up to 1814, and yet the master limited the account to 1809.

*H. R. Storrs,* for respondents. The whole extent of the rule insisted on by the counsel for the appellants, that the decree must conform to the bill, is that a party shall not obtain a different kind of relief from that asked for; not that the relief may not vary in amount from that claimed. The bill was filed to be indemnified for monies paid on a certain bond, which it was alleged the complainants' intestate had executed as the surety of the defendant and another; it was filed by *administrators,* and they asked for *discovery* as well as relief. When the answer came in and the proofs were taken, it appeared that though the intestate was a surety, the defendant was also a surety, and that instead of being entitled to a decree for the *whole* amount asked, the complainants were entitled to a decree for only *half* of such amount. The defendant was charged with a liability growing out of a particular transaction; he answered to the charge, and it cannot be pretended that the decree was not within the scope and equity of the bill and the issue joined between the parties. Beside, this objection was not made in the court below; had it been made there, it might have been obviated by amendment, and therefore cannot now be insisted on. *Beekman* v. *Frost,* 18 *Johns. R.* 544.

There is no foundation for the pretence that Livingston was the surety of Van Rensselaer. The proofs clearly shew that they were co-sureties of Burroughs.; and Van Rensselaer having paid the debt for which they were jointly bound, the other was bound to contribute one half, although it is conceded that he was entitled to participate in the benefit of the mortgage assigned to Van Rensselaer. He, however, is concluded by the foreclosure, having refused to unite with Van Rensselaer in paying the debt for which they were jointly bound. He had no right to control the use of the mortgage. All he could ask was that the property pledged by it should not be sacrificed, and that the proceedings in relation to such property should be conducted in good faith. That they were otherwise conducted is not pretended. Having refused to co-operate with his co-surety, Livingston cannot complain that injustice has been done to him, being allowed to participate in a moiety of the full value of the mortgaged premises at the time of the sale.

*Ogden*, in reply. Livingston should not be held concluded by the foreclosure; it was a statutory proceeding, and there is no evidence of *actual notice* to Livingston, which, under the circumstances of this case, ought to have been given. The only notice he ever had, was when he was required to pay the one half of a debt for which he had become liable with Van Rensselaer on account of Van Rensselaer's son-in-law. The bill was not filed until ten years after the payment of the original bond, and then by the administrators of Van Rensselaer, who during his life did not think proper to bring a suit. It is the claim of one surety against another for *money paid*, and the statute bar of *six* years ought to be applied to it.

The following opinion was delivered,

By Mr. Justice SUTHERLAND. The decree of Chancellor Sanford necessarily involves or presupposes the following propositions: 1. That Henry I. Van Rensselaer and John Livingston were co-sureties for William Y. Burroughs,

in the bond given by them all to Brockholst Livingston, on the 2d day of August, 1798; that is, that the bond was given for the individual debt of Burroughs, and that Livingston and Van Rensselaer were merely his sureties; 2. That the bond had been paid by Van Rensselaer, and that he was entitled to call upon Livingston, his co-surety, for contribution; 3. That the bond and mortgage of Martin Kellogg had come to the hands of Van Rensselaer, and ought to be applied to this debt; that whatever sum, therefore, that bond and mortgage had produced to Van Rensselaer, or with due diligence might have been made to produce, was to be deducted from the amount paid by him to Brockholst Livingston, and John Livingston, the defendant, was to be held responsible for one half the balance. The questions therefore submitted to the master were, 1. The amount which Henry I. Van Rensselaer had paid to Brockholst Livingston, and 2. The sum with which he was justly chargeable on account of the bond and mortgage of Kellogg. His investigations were accordingly principally directed to those two points.

As to the amount paid by Van Rensselaer to Brockholst Livingston, there is no dispute. It was a mere matter of computation, and is stated by the master to have amounted, with interest up to the 15th day of August, 1809, to $8027, 75. That date was assumed by the master as the proper time to strike the balance, because it was the day on which the premises covered by the mortgage of Martin Kellogg were sold, and purchased in, by or on behalf of Van Rensselaer. The master considered Van Rensselaer as having acquired the legal title to the premises by that sale, and as being justly chargeable with the fair cash value on that day. The report of the master was excepted to substantially upon the three following grounds: 1. Because Van Rensselaer was charged with the value of the mortgaged lands, on the 15th July, 1809, the day of the mortgage sale, by virtue of which the legal title, according to the report, became vested in him; whereas he should have been charged with whatever sums they produced in the subsequent sale or disposition made of them by him or by Jacob or Jeremiah Van Rensselaer, who it is alleged were his agents, and acted for him; 2.

Because a commission of 5 per cent. and $50 for the expense of foreclosing the mortgage were allowed to Van Rensselaer; and 3. Because the master took the testimony of Jacob R. Van Rensselaer, who, it is contended, was an incompetent witness. In support of the first exception, it was contended by the appellant in the court of chancery, and is insisted here, that the title which Van Rensselaer acquired in the mortgaged premises, under the mortgage sale, he held in trust for himself and his co-trustee, and that he was bound to re-sell and apply the proceeds to the joint benefit of both. On the other hand, it is contended that Van Rensselaer acquired, under the statute foreclosure, an absolute estate in his own right, unaffected with any trust in favor of Livingston, and that whatever disposition he subsequently made of the lands, he can be charged only with their value at the time of his purchase. But even admitting the trust, it is insisted that the exchange made with Jacob R. Van Rensselaer was a valid and *bona fide* alienation of the property, and that the respondents can in no event be chargeable with any thing more than the clear net value of whatever was received upon that exchange; and it is insisted that the evidence shews that such value was about the same with the cash value of the mortgaged premises at the time of the sale.

It cannot be pretended that there was any express trust between Henry Van Rensselaer and John Livingston; that is, that there was any understanding that Van Rensselaer should take an assignment of the mortgage and foreclose it, and purchase in the mortgaged premises, to be subsequently disposed of for their mutual benefit. Livingston utterly refused to advance any money, or to enter into any arrangement upon the subject, and left Van Rensselaer to pay the debt and to reimburse himself as he best could. It was a fair public sale, conducted in the usual manner, and if the premises had been purchased by a stranger, he would undoubtedly have acquired a clear and absolute title in his own right. Van Rensselaer had a right to become a purchaser. He had been compelled to pay the debt for which this mortgage was given as collateral security, and having paid the debt, he was entitled to the security. He had a personal interest in it, which put

him in the condition of a mortgagee, and authorized him to become a purchaser for his own account and indemnity. The extent of the obligation which the most liberal principles of equity would impose upon him in relation to his co-surety, was to credit the actual value of the land at the time of the purchase, instead of the auction bid, upon the debt to which his co-surety was bound to contribute. This is the basis on which the master's report is founded, and there is no complaint that that value has not been fairly and properly ascertained. I can perceive no principle on which any trust in favor of Livingston can be charged upon the lands themselves after the mortgage sale. His claim was a personal one against Van Rensselaer, and was limited to their value at that time. The title acquired by Van Rensselaer was absolute, and he was not subject to any contingent accountability to his co-surety. If the mortgage sale had been for a substantial though inadequate price, instead of a merely nominal one, it would have admitted of very serious doubt whether Livingston would not have been concluded from instituting an inquiry into the actual value of the lands at that time. He certainly would, if he had had actual instead of constructive notice of the sale. He might have attended the sale, and have taken care of his own interest by bidding more, if he thought the lands were worth more. He could not have folded his arms, and have retained the privilege of considering Van Rensselaer either an absolute purchaser, or as his trustee in the transaction, according as circumstances should determine the one or the other to be most beneficial to himself. Equity will not permit a co-surety voluntarily to assume a position which will secure to him all the advantages, without exposing him to any of the perils which may result from the acts of his associate; but under the circumstances of this case, the sale was properly considered by the chancellor as affording no legal evidence of the value of the mortgaged premises at the time of the sale. The reference to a master to ascertain that value was therefore proper, and the inquiry was correctly restricted to that time; but if Van Rensselaer was to be held responsible for the amount which he subse-

quently realized from the mortgaged premises, the result would certainly not be more favorable to the appellants; for it appears from the corrected testimony of Jacob Van Rensselaer, that in the exchange made between him and Henry I. Van Rensselaer, the *mortgaged* lots were estimated at less than $2000, and there is no pretence that that was not an absolute and *bona fide* alienation of them. There is no ground for the suggestion that either Jacob or Jeremiah Van Rensselaer was the agent of Henry in the subsequent sale or disposition of these lots, or that he ever realized any thing further from them. The objection to the decree, therefore, is unfounded so far as it rests upon the grounds which we have been considering.

The commission of 5 per cent. and $50 for the expense of foreclosing the mortgage were properly allowed by the master. They were objected to principally, as I understand, on the ground that they were not within the order of reference, and not on the ground that the allowance was not equitable and proper in itself. The order directed the master to state such account as he should think proper to shew the true sum with which Henry I. Van Rensselaer ought to be charged by reason of the bond and mortgage. In such an account, the expenses incurred in perfecting his title to the mortgaged premises, and the probable delay or loss in converting them into money, would be necessary ingredients. The allowance was clearly within the scope of the order, and was in itself reasonable and proper.

The objection to the admission of the depositions of Jacob Van Rensselaer is also unfounded. He had no interest in the event of this cause at the time when it was commenced, in 1816, nor until the spring of 1822. His examination in chief was in August, 1817, and his subsequently acquired interest could not affect the competency of those depositions. He was however examined, upon the reference before the master in August, 1826, after his interest accrued; but it was merely for the purpose of correcting his depositions upon a point which obviously had no influence upon the report of the master or the subsequent decree. The competency of the witness does not appear to have been questioned be-

fore the master, although he disclosed his interest on the same examination. But admitting the objection to be in season, for the reasons already stated, it affords no ground for interfering with the report or the decree.

The only remaining question is whether the relief given is compatible with the pleadings and issues in the cause. The decree proceeds upon the ground that Livingston and Van Rensselaer was both sureties for Burroughs in the bond given to Brockholst Livingston. The bill, it is said, alleges that the debt to Brockholst Livingston was the joint debt of Burroughs and John Livingston, and that the complainant Van Rensselaer united in the bond as their surety only, while the answer asserts that it was the debt of Van Rensselaer and Burroughs, and that Livingston was surety for them both. It will be recollected that the bill was filed by the administrators of Van Rensselaer after his death, and that it sought discovery as well as relief. The position which is so often found in the books, that the plaintiff must have his decree according to the form of his bill, does not mean that he can have no decree unless he makes out in proof the precise case stated in his bill, but merely that the relief given must be within its general scope and equity. It very seldom occurs that either party is entirely right or entirely wrong in his claims or pretensions. The great business of a court of equity is to weigh these conflicting claims, to ascertain from the pleadings and the proofs what are the substantial rights of the parties, and to decree accordingly. A complainant files his bill for an account in relation to various transactions, claiming a large balance; the proofs sustain his claim only in part; he is entitled to a decree for that amount. The principle in equity must be substantially the same as at law; the issue may be more or less general and comprehensive; the proof must be confined to the issue, and the recovery may be of the whole or a part of any demand embraced within the issue, according to the evidence. Here the complainants, when they filed their bill, supposed that the debt which their intestate had paid to Brockholst Livingston was the joint debt of Burroughs and John Livingston the defendant,

and that they had therefore a right to demand from the defendant a re-payment of the whole. It was shewn, however, by the answer and the proofs, that it was not the debt of John Livingston, but that he was surety as well as Van Rensselaer, and was responsible therefore only for a moiety instead of the whole of what the intestate had paid. Upon the hearing, therefore, the complainants claimed only a contribution from Livingston as co-surety. The decree establishing that claim was clearly within the general scope and equity of the bill, and within the issue joined between the parties. *James* v. *McKernon*, 6 *Johns. R.* 543. 2 *Atk.* 141. 3 *id.* 182. 2 *Ves. sen.* 225. *Mitford*, 34, 44. A bill for the specific performance of an agreement is like an action at law upon a special contract: the party must prove the agreement precisely as it is laid; 5 *Ves.* 442; 6 *id.* 548; but the rule rests upon considerations peculiar to that class of cases, and is confined to them.

My opinion therefore is that the decree of the chancellor should be affirmed.

In which opinion Chief Justice SAVAGE and Mr. Justice MARCY and eighteen senators concurred. Two senators dissented; they being of opinion that the decree of the chancellor ought to be reversed.

Whereupon the decree of the chancellor was *affirmed*, with costs.