JAMES E. CRISFIELD, as Supervisor, etc., Respondent, *v.* JAMES S. MURDOCK et al., Appellants.

Where, in an equity action, no objection was made by the answers to the maintenance of the action on the ground that the plaintiff had an adequate remedy at law, but, on the contrary, the defendants demanded equitable relief, *held*, that it was too late to take the objection on the trial.

Under the provisions of the Revised Statutes (1 R. S. 346, § 20), providing for the filing of a collector's bond and the entry thereof by the county clerk "in the same manner in which judgments are entered of record," and declaring that every such bond "shall be a lien on all the real estate held jointly or severally by the collector or his sureties," the lien so created is a general one, having no greater force than the lien of a judgment, and a prior unrecorded mortgage is entitled to priority over the bond.

It was not within the contemplation of the statute, before the passage of the act of 1887 (Chap. 372, Laws of 1887), requiring such bonds to be recorded, that they should be within the protection of the Recording Act, and the fact that the supervisor, who filed a bond prior to that time, at the time of filing requested it to be recorded in the book in which mortgages, or securities in the nature of mortgages, were required to be recorded, does not affect its *status* as a lien.

In an action in equity to enforce the lien of such a bond upon the real estate of F., one of the sureties, it appeared that he was the president, cashier and general manager of a bank in which the collector deposited the avails of taxes collected ; the latter had on deposit sufficient to pay, and delivered his check against his account for the amount due the county treasurer, to F., who agreed to transmit the amount to said

treasurer; this he failed to do. The bank continued business forty-four days after the delivery of the check, when it closed its doors, and its assets passed into the hands of a receiver; meanwhile F. became insolvent. *Held*, that while, in the absence of proof that the bank ever paid, the collector could not have maintained an action against F., and so had no right, as against him, to which the co-surety with F. could be subrogated; yet as F., from his official position, knew the financial condition of the bank, and could have obtained from it the moneys to pay the county treasurer as agreed and thus have satisfied the bond, in omitting to do this, he failed to discharge a duty he owed the collector and his co-surety; and so, that as against F., the co-surety was entitled to have the lien of the bond enforced out of real estate of F.; and that it was properly charged with the whole amount.

*Also held*, that the equity of the co-surety was superior to that of a subsequent mortgagee and grantee of F., the consideration for whose deed and mortgage was simply an antecedent debt.

*It seems*, that in an action to foreclose the lien of a collector's bond upon the real estate of the sureties, in the absence of circumstances rendering the property of one of them chargeable with the whole amount in the first instance, the decree should direct that the lands of each be first made available to secure the payment of one-half.

Where, however, the equities between the sureties are such as would prevent one of them, in case of payment, from maintaining an action for contribution against his co-surety, or from successfully resisting an effort by the latter, in case of payment by him, from obtaining a judgment against the former for the full amount, a decree is proper charging his real estate in the first instance with the whole amount.

*It seems*, the filing and entry of the bond, as required by the statute, is notice to all subsequent purchasers of the existence of a lien on the real estate of each surety, enforceable for the full amount of any default on the part of the principal, and while one surety has a right of action against his co-surety for contribution, he is liable to be defeated if, by reason of his neglect or misconduct, the co-surety would be injured by a judgment compelling contribution.

The filing and entry of the bond is, therefore, not simply notice to a subsequent purchaser of land charged with the lien thereof, that it is liable only with a proportion of any liability accruing thereon, but he is put upon inquiry to ascertain as to the equities between the co-sureties.

Also *held*, that a provision in the decree authorizing the subsequent grantee and mortgagee to redeem within the period provided by statute for the redemption of lands sold on execution, was error.

The right to redeem lands from sale exists only when given by statute, and while the lien created by the filing and entry of a collector's bond is a general one, with no greater effect as against prior unrecorded conveyances than a judgment, it is not a judgment lien, or enforceable by sale

under execution, and the provision of the Code of Civil Procedure, authorizing redemption from sales under executions (§ 1446), does not apply.
Reported below, 53 Hun, 143.

(Argued April 21, 1891; decided June 9, 1891.)

APPEAL from judgment of the General Term of the Supreme Court in the fifth judicial department, entered upon an order made December, 1889, which affirmed a judgment in favor of plaintiff entered upon a decision of the court on trial at Special Term.

The nature of the action and the facts, so far as material, are stated in the opinion.

*W. A. Sutherland* for Hyland, appellant. The plaintiff had two funds to which he could resort, the lands of Whiteman, and the lands of Faulkner. Equity demands that he should resort to the lands of Whiteman, so that Hyland, whose lien is only on the land of Faulkner, may be protected. (*Hawley* v. *Mansius,* 7 Johns. Ch. 174; *Taylor* v. *Dodd,* 58 N. Y. 335; *Geller* v. *Hoyt,* 7 How. Pr. 265; *Ingalls* v. *Morgan,* 10 N. Y.178; *Besley* v. *Lawrence,* 11 Paige, 581; *Welch* v. *Jones,* 22 How. Pr. 474.) It was error to deny the motion on behalf of Hyland to dismiss the complaint on the ground that the plaintiff had a perfect remedy at law, and that the case should be tried as an action at law. ( *Wollf* v. *Burke,* 56 N. Y. 115; *Andrews* v. *Morilaws,* 8 Hun, 65.) Although the deed to John N. Faulkner was given to secure a precedent debt, and although the mortgages to Hyland were given upon the same consideration, they were each, to the extent of their several liens, holders for value. (*Moyer* v. *Urtel,* 9 N. Y. S. R. 667; *Grocers' Bank* v. *Penfield,* 69 N. Y. 502; *Tinsdale* v. *Murray,* 9 Daly, 446; *Continental Bank* v. *Townsend* 87 N. Y. 8.)

*Chas. J. Bissell* for respondent. The plaintiffs properly brought the action in equity to foreclose the lien of the bond, and none of the defendants are in a position to question the

right. (*Granden* v. *LeRoy,* 2 Paige, 509; *Wisswall* v. *Hall,* :3 id. 313; *LeRoy* v. *Platt,* 4 id. 77; *Fulton Bank* v. *N. Y. E. S. C. Co.,* Id. 127; *Bank of Utica* v. *Utica,* Id. 399; *Ketchum* v. *Hawks,* 2 N. Y. Leg. Obs. 384; *Truscott* v. *King,* 6 N. Y. 147; *Cox* v. *James,* 45 id. 557; *Green* v. *Millbank,* :3 Abb. [N. C.] 138; *Pain* v. *Vilmer,* 54 How. Pr. 235; *Ostrander* v . *Weber,* 114 N. Y. 95–102; *Bank of Auburn* v. *Throop,* 18 Johns. 504; *Wright* v. *Austin,* 56 Barb. 17; *King* v. *Baldwin,* 17 Johns. 384; *Hayes* v. *Ward,* 4 Johns. Ch. 122.) The form of the decree should be modified. (*Cary* v. *White,* 52 N. Y. 138.)

*Fred. W. Noyes* for defendants Whiteman. Equity will enforce the lien of the collector's bond as against any creditor of James Faulkner, or any person holding subsequent liens against his real property. (*Wilder* v. *Butterfield,* 50 How. Pr. :385.) The bond in suit was given for a valuable consideration and constituted the supervisor as representing the town a pur-chaser for value; its object under the statute was to extend the time of the payment of the debt owing by the collector, for a definite time, and was the consideration fixed by the statute upon which such extension rested. The collector is a debtor pure and simple for the amount of the tax money named in the warrant. (*Fake* v. *Whipple,* 39 N. Y. 294; *Muzzy* v. *Shattuck,* 1 Den. 233; *Carey* v. *White,* 52 N. Y. 138; *Bacon* v. *Van Schoonhoven,* 19 Hun, 158; Broom's Leg. Max. [4th ed.] 207; *Wilson* v. *Boyce,* 2 Otto, 320–326; 92 U. S. 608; *Jackson* v. *DeLancey,* 4 Cow. 427; *Pond* v. *Bergh,* 10 Paige, 140; 1 Atk. Conv. 2; *County of Dallas* v. *Timberlake,* 54 Ala. 403; *Knighton* v. *Curry,* 62 id. 404.)

*Edward B. Cloyne* for Wadsworth, respondent. The Court of Appeals will not overrule the judgment of the Special Term, as it has never been appealed from. (Code Civ. Pro. § 190.) But assume that the question as to whether Hyland or Wadsworth has superior equities is regularly before this court, then we say that the determination of the Special Term

was right, and the affirmance by the General Term, if it did affirm it, is right. (*Bingham* v. *Hyland*, 25 N. Y. S. R. 780.) The lien of the collector's bond did not displace or supersede the lien of Wadsworth's mortgage or become in any manner superior thereto. The Wadsworth mortgage is several months older than the collector's bond. The maxim "Prior in time, is prior in right" is applicable. (1 R. S. chap. 11, tit. 3, art. 2, § 20; 1 Story's Eq. Juris. § 506; *Edgell* v. *Hart*, 9 N. Y. 217; *Upham* v. *Haddock*, 13 Hun, 571; *Wilder* v. *Butterfield*, 50 How. Pr. 385.)

PARKER, J. The plaintiff, as supervisor of the town of North Dansville, brought this suit in equity to enforce the lien of the collector's bond against the defendant J. S. Murdock as principal, and the defendants James Faulkner and Reuben Whiteman, sureties. The defendants Hyland, Wadsworth and John N. Faulkner, being made parties as incumbrancers. On the 7th day of February, 1887, the county treasurer of Livingston county having duly extended the time for the collection of the unpaid taxes in the town of North Dansville, the collector, with his sureties, Faulkner and Whiteman, renewed their bond in the manner provided by chap. 10 of the Laws of 1885, and it was on that day duly approved and filed and entered in the county clerk's office.

Subsequently the collector made return on his warrant, when there was found to be in his hands $2,180.10, which was due to the county treasurer. That sum has never been paid, and it was to secure the collection thereof that this suit to enforce the lien of the bond was instituted. The money in the hands of the collector was by him deposited with the First National Bank of Dansville, of which James Faulkner, one of the sureties, was a shareholder, president, cashier and general manager.

The collector gave to James Faulkner a check for the amount due the county treasurer, he agreeing to pay the amount called for by it to the treasurer. This he did not do, and on the 24th day of August, 1887, the bank ceased to do business and its

assets passed into the hands of a receiver. Subsequently the county treasurer duly issued and delivered to the sheriff of the county his warrant, commanding him to levy said sum of $2,180.10 out of the property of the collector, which was thereafter returned unsatisfied, because the collector had no goods or chattels, or lands or tenements, out of which the moneys called for by the warrant could be obtained.

Faulkner in the meantime had become insolvent. An action at law on the bond, therefore, could have but resulted in enforcing collection of the entire amount from the surety Whiteman, who was solvent. Such a result would have been most inequitable, and for that reason the plaintiff may have been induced to institute a suit for the foreclosure of the lien in the first instance, Faulkner having been the owner of considerable real estate, to which the lien of the bond attached the moment of its filing and entry in the county clerk's office. On the trial the point was made that the plaintiff ought not to maintain this suit because he had an adequate remedy at law, and it is again urged on this appeal. In the answers of the several defendants, no such objection was made. On the contrary each defendant, after setting forth the facts deemed the most favorable to his position, demanded equitable relief.

The parties having thus submitted to the jurisdiction of the court it was too late to take the objection on the trial that the plaintiff had a remedy at law. (*Grandin* v. *LeRoy*, 2 Paige, 509; *LeRoy* v. *Platt*, 4 id. 77; *Town of Mentz* v. *Cook*, 108 N. Y. 504; *Baron* v. *Korn*, 127 id. 224.) Whether the objection, if seasonably taken, could have been made available need not, therefore, be considered. The right of the plaintiff then to enforce the lien of this bond must be deemed established, and the questions requiring consideration grow out of that portion of the decree which determines the equities of the several defendants as against each other, and also whether the decree was right in so far as it adjudged that subsequent mortgagees and grantees should have the right of redemption.

In the determination of the questions thus presented, we shall first consider whether as against Faulkner, the co-surety

Whiteman is entitled to have the entire amount due to the plaintiff collected out of the property of Faulkner, if on a sale enough shall be realized for that purpose.

While on the execution of the undertaking each of the sureties became liable to pay the amount of any default on the part of the collector, nevertheless in the event of payment of the whole by one of them he would ordinarily be entitled to contribution from the other, to the extent of one-half the amount so paid.

And in a suit to foreclose the lien, in the absence of circumstances equitably rendering the property of the one chargeable with the whole amount in the first instance, the court would decree that the lands of each should first be made available to secure the payment of one-half. But it is asserted in this case that by reason of the acts of Faulkner, his co-surety is entitled to have the entire amount collected out of Faulkner's property, if it shall prove sufficient for that purpose.

Faulkner was the president and cashier of the bank in which the collector deposited the avails of taxes collected. It appears that for many years Faulkner had been one of the sureties of Murdock, as collector of the town, on an understanding that the moneys received should be deposited in the bank of which he was president.

On the 11th day of July, 1887, about forty-four days before the failure of the bank, the collector drew his check against his account as kept in the bank for the sum due the county treasurer and left it with Faulkner at the bank, who at the time promised to transmit the amount thereof, either in money or in draft to the treasurer of Livingston county. This Faulkner did not do, notwithstanding he had accepted the check and retained it down to the time of the bank's failure. Now it will be observed that the moneys were deposited with the bank, and not with Faulkner. When deposited the title to the money passed to the bank which impliedly promised to pay the debt thereby created, by honoring the checks of the depositor as they were presented, so that the relation of the bank, and the collector was, thereafter, that of debtor and creditor.

(*O'Connor* v. *Mechanics' Bank*, 124 N. Y. 324.) It does not appear that the bank ever paid the check, so that at the time of its failure the title to the funds were in it, and not in Faulkner. As Faulkner never had the moneys, the collector could not have maintained an action against him for their recovery, and in that respect, therefore, the collector had no right as against Faulkner, to which the co-surety Whiteman could be subrogated.

The collector had a claim against the bank for the moneys deposited with it, but the bank was not a surety, and the rights of the collector against it, cannot be made available to the sureties in this suit.

The question is, therefore, presented, whether in that which he did, or omitted to do, Faulkner failed to discharge a duty which he owed to the collector, and the co-surety. During the forty-four days which elapsed between the giving of the check and the failure of the bank, the bank received deposits and paid checks, as theretofore during its existence. It was a debtor to the collector in the amount of his check, which it could have paid as well as the checks of other depositors honored subsequent to the date of the collector's check.

Faulkner, as president and cashier of the bank, knew of its financial condition; knew that the plaintiff had moneys there, applicable to the payment of the check; and was in a position to obtain the moneys and pay the county treasurer, as he had agreed to do. Had he done so, the bond would have been satisfied, and the collector, and his sureties relieved from liability.

The doctrine of contribution in the absence of a contract, express or implied, between sureties to indemnify each other, rests on principles of equity. Relief being afforded to the surety making payment, on the ground that the sureties have common interest and a common burden, for as all are equally bound and equally relieved, equity deems it but just that all should contribute in proportion, towards a benefit obtained by all. (Burge on Suretyship, 384; 1 Story's Eq. Jur. § 493.) A co-surety is entitled to any indemnity, or the avails of it,

which his co-surety suing for contribution had from the principal debtor or if the co-surety has released, or discharged the indemnity, or has collected, and applied the avails to his own use, he cannot recover. (Theobald on Prin. and Surety, chap. II, § 283 ; *Livingston* v. *Van Rensselaer*, 6 Wendell, 63.)

In *Ramsey* v. *Lewis* (30 Barb. 403), one of several sureties took from the principal a chattel mortgage, to indemnify him for becoming such surety, and afterwards discharged the same without the consent of his co-sureties, and upon the principles already alluded to, it was held in an action brought by him against his co-sureties, that they had an equitable interest in the chattel mortgage, and that to the extent that they were injured by the plaintiff's relinquishment without their consent, they were entitled to relief as against him.

In *Elwell* v. *Skiddy* (77 N. Y. 282), the court states the rule in these words : " If the co-surety suing for contribution has received any money or property as payment, or security from the principal, he will be obliged to account for the same."

Had Faulkner been solvent after the failure of the bank, and had been required to pay the county treasurer the amount due on the bond, within the principle of the cases cited, he would not have been entitled to recover in an action against his co-surety for contribution, because the collector had placed in his hands the means by which the indebtedness could and should have been paid, thus relieving the principal as well as the sureties from liability, and he owed to his co-surety as well as his principal the duty of making available that which he received for such purpose. So, if the co-surety Whiteman, after default, had paid the amount of the bond, he would have been entitled in an action against Faulkner to recover his proportion of the benefit which Faulkner should have derived from any moneys, securities, or property given to him by the principal to be applied in the extinguishment of the indebtedness for which he had become surety. His failure to do so was doubtless due to the fact that by omitting to withdraw the funds from the bank, he hoped to postpone the hour of the bank's insolvency, and ·his own

financial ruin, but while this may tend to explain, it in no wise excuses his neglect to perform the duty of collecting the money from the bank and making payment.

Faulkner is no longer responsible, but the lien sought to be foreclosed is by the terms of the bond, enforceable against his real estate for the entire amount due thereon, and in view of the equities existing in favor of his co-surety, equities which would prevent Faulkner from either maintaining an action for contribution against Whiteman, or from successfully resisting an effort by his co-surety to obtain judgment for the full amount of the default after payment thereof by him, a court of equity, as against Faulkner, will not relieve his real estate on which the bond is a lien from bearing the full burden of it, but will decree that the entire proceeds thereof, so far as required, be applied in extinguishment of the amount due.

Having reached the conclusion that as against Faulkner the co-surety had such equities as to entitle him to a decree that the lien of the bond be enforced out of Faulkner's real estate, we are brought to the question whether such equity is superior to that of Hyland, a subsequent mortgagee and grantee of Faulkner's.

Prior to the 11th day of July, 1887, the collector had made his collections and he was in default as collector. On that day, he drew his check for the amount of his default and delivered it to Faulkner, who agreed to send the money or a draft to the treasurer.

Subsequently, and on the twenty-fourth of August, the day on which the bank ceased to do business, Faulkner conveyed to John Hyland certain lands on which the collector's bond was a lien.

On the same day he mortgaged certain other lands, likewise charged with the lien of such bond, to Hyland as security for the sum of twenty thousand dollars, to cover certain promissory notes made and indorsed by Hyland, for the benefit of Faulkner.

A few days prior thereto, and on August eighteenth, Faulkner mortgaged to Hyland still other lands which

he owned at the time of filing and entry of the bond as security for the sum of fifteen thousand dollars. If, without actual notice of the then existing equity in favor of Whiteman, Hyland had advanced the amount of money called for by the deed and the mortgages, at the time of their execution and delivery, whether such equity was nevertheless superior to the rights acquired by Hyland under his deed and mortgages, would have presented an interesting question? The filing and entry of the bond in the county clerk's office as required by statute, was notice to all subsequent purchasers of the existence of a lien on Faulkner's real estate, enforceable for the full amount of any default on the part of the principal, for by the terms of the bond as affected by statute, each surety was separately bound, and the real estate of each separately charged with the payment of any sum which the principal should omit to pay over, as required by the terms of the warrant delivered to him.

While it is true that one surety has a right of action against his co-surety for contribution, he is liable to be defeated in whole or in part, if by reason of his neglect or misconduct, his co-surety will be injured by a judgment compelling contribution. So that it can hardly be said that the entry of the bond is notice to a subsequent purchaser, that the real estate conveyed to him is chargeable only with a certain proportion of any liability that may accrue thereon, for it is in the first instance burdened with the entire liability, and whether it can be reduced by enforced contribution from a co-surety, may be dependent on the existence or non-existence of equities in favor of the one as against the other, which do not appear on the face of the instrument. It is, therefore, said that a purchaser under such circumstances is put on inquiry to ascertain whether there are any equities which prevent his grantor from compelling contribution from his co-surety, and to that extent relieve the charge upon the lands about to be conveyed.

The evidence is silent touching any inquiry in that direction by Hyland, it does not even appear that he had personal knowledge of the existence of the bond. But this subject

need not be pursued further, for Hyland was not a *bona fide* purchaser in such sense as to entitle him to take title paramount to the then existing equity in favor of Whiteman.

Hyland was a creditor of Faulkner, and the consideration for the deed and mortgages was an antecedent debt, which furnished a valuable consideration for their support, but in the absence of some new consideration parted with upon the faith of the purchase, did not operate to protect his title against a prior outstanding equity. (*Matter of Howe*, 1 Paige, 125 ; *Jackson* v. *Campbell*, 19 Johnson R. 282 ; *Ray* v. *Birdseye*, 5 Denio, 619 ; *Wood* v. *Robinson*, 22 N. Y. 567 ; *Knower* v. *Central National Bank*, 124 N. Y. 552.)

Before the execution of the bond, and on the 14th day of September, 1886, the defendant James Faulkner and his wife, executed and delivered to the defendant James W. Wadsworth, a mortgage covering certain of the lands described in the complaint, and conditioned for the payment to Wadsworth of the sum of $10,000.

Wadsworth did not record the mortgage until August 25, 1887, so that between the date of the execution and that of recording the mortgage, the bond in controversy became a lien on all the real estate of Faulkner.

Whether the lien of the bond is superior to that of the mortgage, presents one of the questions which we are invited to pass upon. The statute providing that the effect of the execution, delivery, filing and entry of the collector's bond shall operate to create a lien on all the real estate in the county of the collector and his sureties is as follows : " The supervisor shall, within six days thereafter, file such bond, with his approbation indorsed thereon, in the office of the county clerk, who shall make an entry thereof in a book to be provided for the purpose, in the same manner in which judgments are entered of record ; and every such bond shall be a lien on all the real estate held jointly or severally by the collector or his sureties within the county at the time of the filing thereof, and shall continue to be such lien till the condition, together with all costs and charges which may accrue by the prosecution

thereof shall be fully satisfied." (R. S. part 1, chap. 11, title 3, article 2, § 20.) It was the view of the courts below that the lien which the statute declares shall be created by the filing and entry of a collector's bond in the county clerk's office is a general lien, having no greater force and effect than the lien of a judgment. Such was also the conclusion of the court in *Wilder* v. *Butterfield* (50 How. Pr. 385). And following the well-settled rule that an unrecorded mortgage is entitled to priority over the lien of a judgment, it was held that the lien of the Wadsworth mortgage was superior to the lien of the bond.

The conclusion thus reached accords with our view of the intent and effect of the statute. It does not in terms declare that a lien thus created shall be superior to and take precedence over all outstanding equities; nor was the purpose of the act to secure the town in all cases by a lien on real estate, for the supervisor is authorized to determine the sufficiency of the sureties, and may accept a bond executed by persons who are not the owners of real estate.

So the responsibility of securing the town against loss occasioned by a defaulting collector, is primarily placed upon the supervisor, and by way of further security merely, the bond is made a lien on the real estate of principal and sureties.

As the policy of the statute was not necessarily to secure the town by a lien on real estate, but to burden the supervisor with the obligation of determining the sufficiency of the sureties, it was apparently not deemed necessary to provide that the lien should be superior to equities not of record.

Certainly there is nothing in the statute suggesting an intention to the contrary. One of the appellants contends that the supervisor of the town is a purchaser, the bond a conveyance, and the filing and entry in the county clerk's office a recording thereof within the meaning of the Recording Act.

It may be observed in this connection that the bond was not acknowledged as required by statute, in order to entitle conveyances, or mortgages, or securities in the nature of mortgages, to be recorded; nor was it recorded in the books

required by the Recording Act to be kept for such purpose, but instead it was filed and entered in a separate book as required by statute, in the same manner in which judgments are entered of record.

And in that which was done the county clerk did all that the statute commanded him to do, and in the absence of an acknowledgement, all that he was authorized to have done, had the supervisor requested that it be recorded in the book in which mortgages or securities in the nature of mortgages are required to be recorded; but the statute does not seem to have contemplated such a bond should be within the protection of the Recording Act. It does not refer to the act, require the bond to be acknowledged, nor make a provision for recording it, but declares that a lien shall be created if the bond be "filed in the office of the county clerk, who shall make an entry thereof in a book to be provided for the purpose, in the same manner in which judgments are entered of record." Since the execution of the bond the legislature has provided that such bonds shall be recorded. (Chap. 372, Laws 1887.) But such enactment in so far as it may be said to indicate legislative construction of the statute before us, supports the view we have expressed.

The question remaining is whether the decree was right in so far as it adjudged that the subsequent grantee and mortgagee should be permitted to redeem within the period of time provided by statute for the redemption of lands sold under execution. The right in law to redeem lands from sale exists only when given by statute. Our statutes provide for a redemption of lands sold under mortgages to the state (R. S. part 1, chap. 9, title 6, § 14); or for non-payment of taxes (R. S. part 1, chap. 13, title 3, § 94), and from a sale under an execution (Code Civ. Pro. § 1446). And courts of equity will decree that redemption may be made in certain cases. (*Taggart* v. *Rogers,* 49 Hun, 265; *Crane* v. *McDonald,* 2 N. Y. S. R. 150; *Casserly* v. *Witherbee,* 119 N. Y. 522.) But in equity, the general rule is that where all the parties are before the court and the sale is to be made pursuant to its decree, and by an

officer appointed by it for the purpose, the right of redemption will not be allowed except by command of the statute. And this case comes within that rule.   The lien created by the filing and entry of the bond is a general lien with no greater force and effect as against prior unrecorded mortgages than that of a judgment.   But it is not a judgment lien, nor is it to be enforced by sale under execution as the statute provides a judgment lien shall be.   The section of the Code above referred to is not, therefore, applicable to the situation presented, and as there exist none of the equities requisite to bring this case within the rule which has led courts of equity in certain cases to adjudge that a party be permitted to redeem, the right of redemption should not have been authorized by this decree.   This view accords with the conclusion reached in *Wilder* v. *Butterfield* (*supra*).

The judgment should be modified accordingly and, as modified, affirmed, with costs to the plaintiff.

All concur.

Judgment accordingly.